UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
                                                      :
Hughes, Hooker & Co. and                              :
Hughes, Hooker (Correspondents) S.A.                  :          04 CV 01859 (SHS)
                                                      :
                        Plaintiffs,                   :
                                                      :
- against -                                           :
                                                      :
American Steamship Owners Mutual                       :
Protection and Indemnity Association, Inc.            :
Shipowners Claims Bureau                              :
Joseph E.M. Hughes                                    :
Thomas J. McGowan                                     :
Vincent J. Solarino                                   :
                                                      :
                        Defendants.                   :
------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT
## OF DEFENDANTS' RENEWED MOTIONS FOR
## ORDERS STAYING THIS ACTION PENDING
## ARBITRATION IN LONDON

Nourse & Bowles, LLP
One Exchange Plaza
at 55 Broadway
New York, New York 10006
(212) 952-6200

TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................ 1

FACTS ............................................................................................................................ 4
  1. Background ......................................................................................................... 4

    a) The Parties ....................................................................................................... 4
    b) The Contract .................................................................................................... 5

  2. The Arbitration Clause ..................................................................................... 5

  3. The Performance Under the Contract ........................................................... 6

  4. Plaintiffs' Amended Complaint ..................................................................... 7

  5. The Arbitration Demand .................................................................................. 8

ARGUMENT ................................................................................................................. 8

POINT I - PLAINTIFFS' CLAIMS AGAINST THE AMERICAN CLUB
SHOULD BE STAYED PENDING LONDON ARBITRATION .......................... 8

  1. The Federal Arbitration Act Governs ........................................................... 8

  2. The Arbitration Clause Is Also Enforceable Pursuant to the New
  York Convention ................................................................................................ 12

  3. Plaintiffs' Fraud Allegations Do Not Bar Enforcement of The
  Arbitration Clause ............................................................................................. 13

POINT II - A STAY OF PLAINTIFFS' ACTION AGAINST THE NON-
PARTY DEFENDANTS IS APPROPRIATE UNDER THE DOCTRINE
OF PARALLEL-PROCEEDING ABSTENTION ................................................. 14

    A. The Non-Party Defendants Have Not and Will Not Take Steps
    to Hamper the Progress of the Arbitration ............................................. 17

B.  The Arbitration Proceedings Will Conclude Within a
Reasonable Time ..................................................................................... 18

C.  Any Delay Will Not Work Undue Hardship..................................... 18

POINT III - A STAY OF PLAINTIFF'S ACTION AGAINST  THE NON-
PARTY DEFENDANTS IS AUTHORIZED BY SECTION 3 OF THE U.S.
ARBITRATION ACT ............................................................................................ 20

POINT IV - THE COURT'S STAY ORDER IS NECESSARY AND
PROPER TO AVOID PREJUDICE TO THE AMERICAN CLUB'S RIGHT
TO  ARBITRATION AND TO THE NON-PARTY DEFENDANTS .................. 24

CONCLUSIONS ................................................................................................... 27

# TABLE OF AUTHORITIES

## FEDERAL CASES

*American Home Assurance Co. v. Vecco Concrete Construction Co., Inc. of
Virginia*, 629 F.2d 961 (4th Cir. 1980)................................................. 21, 23

*American Renaissance Lines, Inc. v. Saxis S.S. Co.*,
502 F.2d 674 (2d Cir. 1974) ..................................................................... 25

*Benjamin v. Traffic Executive Association*,
869 F.2d 107 (2d Cir. 1989) ..................................................................... 25

*Bogulslavsky v. Kaplan*, 159 F.3d 715 (2d Cir. 1998) ................................. 25

*Citrus Marketing Board of Israel v. J. Lauritzen A/S*,
943 F.2d 220 (2d Cir. 1991) ........................................................ 16, 22, 26

*Contracting Northwest, Inc. v. City of Fredericksburg*,
713 F.2d 283 (8th Cir. 1983) ............................................................. 21, 23

*Danisco A/S v. Novo Nordisk*, 2003 U.S.Dist. LEXIS 1842
(S.D.N.Y. 2003)......................................................................................... 23

*Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213,
84 L.Ed.2d 158, 105 S.Ct. 1238 (1985)....................................... 21, 24, 25

*Dimercurio v. Sphere Drake*, 202 F.3d 71 (2d Cir. 2000)............................ 12

*Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840 (2d Cir. 1987)............... 11

*I. Appel Corp. v. Katz*, 1999 U.S.Dist. LEXIS 6744 (S.D.N.Y. 1999) .. 25, 26

*IDS Life Insurance Co. v. Sunamerica, Inc.*, 103 F.3d 524 (7th Cir. 1996).. 16

*Jacobson v. Firemans Fund Insurance Co.*, 111 F.3d 261 (2d Cir. 1997)... 25

*Lafarge  Canada, Inc. v. Bank of China*, 2000 U.S.Dist.
LEXIS 14253 (S.D.N.Y. 2000) ................................................................ 26

*Landis v. North American Co.*, 299 U.S. 248, 57 S.Ct. 163
81 L.Ed. 153 (1936)................................................................................ 15

*Lawson Fabrics, Inc. v. Akzona, Inc.*, 355 F.Supp. 1146 (S.D.N.Y.)
aff'd without opinion, 486 F.2d 1394 (2d Cir. 1990) ........................ 10, 26

*McCowan v. Sears, Roebuck & Co.*, 908 F.2d 1099 (2d Cir.)
cert. denied, 498 U.S. 897, 111 S.Ct. 250, 112 L.Ed. 2d 209 (1990) .... 22

*Midland Walwyn Capital, Inc. v. Spear, Leeds & Kellogg*, 1992 U.S.Dist.
LEXIS 14289 (S.D.N.Y. 1992) ............................................................. 25

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614,
105 S.Ct. 3346, 87 L.Ed.2d 444 (1985) ........................................... 11, 21

*Morrie & Shirlee Mages Foundation v. Thrifty Corp.*,
916 F.2d 402 (7th Cir. 1990). .............................................................. 9, 23

*Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S.
1, 103 S.Ct. 927 74 L.Ed.2d 765 (1983) ....................................... 8, 11, 21

*Nederlandse Erts-Tankersmaatschappij, N.V. v. Isbrandtsen Co., Inc.*, 339
F.2d 440 (2d Cir. 1964) ....................................................... 15, 17, 21, 26

*Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*,
388 U.S. 395 (1967) ........................................................................... 9, 14

*SCAC Transport (USA), Inc. v. S.S. DANOS*,
845 F.2d 1157 (2d Cir. 1988) ................................................................. 18

*Salim Oleochemicals, Inc. v. M/V SHROPSHIRE*, 169 F. Supp. 2d 194,
(S.D.N.Y. 2001) aff'd, 2002 U.S.App. LEXIS 14124 (2d Cir. 2002)..... 11

*Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270
(1974) ..................................................................................................... 11

*Sea Spray Holding, Ltd. v. Pali Financial Group, Inc.*, 269 F. Supp. 2d 356,
366 (S.D.N.Y. 2003) ........................................................................ 16, 23

*Sierra Rutile Ltd. v. Katz*, 937 F.2d 743 (2d Cir. 1991) ......................... 16, 23

ii

*Smith/Enron Cogeneration Limited Partnership, Inc. v. Enron International C.V.*, 198 F.3d 88, (2d Cir. 1999) <u>cert. denied,</u> 531 U.S. 815 (2000) ... 12

*Subway Equipment Leasing Corp. v. Doctors Associates, Inc.*, 169 F.3d 324 (5th Cir. 1999) .................................................................. 21, 24

*The Orange Chicken, L.L.C. v. Nambe Mills, Inc.*, 2000 U.S.Dist. LEXIS 18214 (S.D.N.Y. 2000).......................................................................... 26

*The Provident Bank v. Bernards*, 141 F. Supp. 2d 310, 319 (E.D.N.Y. 2001) .................................................................................. 26

*United Steelworkers of America v. Warrior and Gulf Navigation Co.*, 363 U.S. 574 (1960)....................................................................................... 11

*Whitney v. Mizel*, 2001 U.S.Dist. LEXIS 12565 (D. Ct. 2001).................... 26

*WorldCrisa Corp. v. Armstrong*, 129 F.3d 71 (2d Cir. 1997)................ 16, 26

## FEDERAL STATUTES

9 U.S.C. § 1 *et seq.* .................................................................................. 2, 8

9 U.S.C. § 3 .......................................................................................... 9, 21

9 U.S.C. § 202 ..................................................................................... 12, 13

NOURSE & BOWLES, LLP
Attorneys for Defendants
One Exchange Plaza
At 55 Broadway
New York, NY  10006-3030
(212) 952-6200

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
                                                      :
Hughes, Hooker & Co. and                              :
Hughes, Hooker (Correspondents) S.A.                  :          04 CV 01859 (SHS)
                                                      :
                             Plaintiffs,              :
                                                      :
- against -                                           :
                                                      :
American Steamship Owners Mutual                       :
Protection and Indemnity Association, Inc.            :
Shipowners Claims Bureau                              :
Joseph E.M. Hughes                                    :
Thomas J. McGowan                                     :
Vincent J. Solarino                                   :
                                                      :
                             Defendants.              :
-------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT
## OF DEFENDANTS' RENEWED MOTIONS FOR
## ORDERS STAYING THIS ACTION PENDING
## <u>ARBITRATION IN LONDON</u>

### <u>PRELIMINARY STATEMENT</u>

Defendant American Steamship Owners Mutual Protection & Indemnity Association, Inc. (the "American Club") submits this Memorandum of Law and the accompanying Affidavit of Lawrence J. Bowles dated February 28, 2005 (the "Bowles Aff.") and the Exhibits annexed thereto in support of its motion for an Order under

Sections 3 and 206 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §1 *et seq*., staying this action as against it pending arbitration in London pursuant to a written agreement between the American Club and plaintiffs Hughes Hooker & Co., of London and Hughes Hooker (Correspondents) S.A..

Defendants Shipowners Claims Bureau ("SCB"), Joseph E.M. Hughes ("Mr. Hughes"), Thomas McGowan ("Mr. McGowan"), Vincent J. Solarino ("Mr. Solarino"), who are not parties to the agreement in dispute (collectively "the non-party defendants") submit this Memorandum of Law in support of their motion for an Order staying this action as against them pending the above arbitration in London.

Since the inception of this lawsuit, Mr. Bielecki has been baselessly attempting to alter the terms of the Agreement he drafted to increase plaintiffs' rights and reduce those of the American Club.  In essence, Mr. Bielecki's position is that the dispute resolution provision of the Agreement, which he personally drafted and proposed to defendant, the American Club, (Clause 5), means something entirely different from its plain, unambiguous language.  Mr. Bielecki/plaintiffs apparently have decided that there are disadvantages to them in resolving these disputes in arbitration in London.  However, whatever the limitations of London arbitration may be, Mr. Bielecki who was then an English solicitor and the senior partner of his firm of London solicitors, must surely have known of all of those limitations when he drafted and proposed Clause 5 of the Agreement, which the American Club accepted.

The American Club has an absolute contractual right to opt to arbitrate plaintiffs' claims in London. London is also convenient in that (a) the main issues in dispute are whether plaintiffs are responsible for bringing Greek shipowners to the American Club and whether plaintiffs are entitled to commissions therefor. Witnesses from Greece will likely be required to testify regarding the merits of the dispute and Greece is much closer to London than New York and (b) plaintiffs and Mr. Bielecki reside there and if, as expected, the American Club obtains an award of costs against plaintiffs regarding their baseless claims, that award can be more readily enforced in London than in New York.

Contrary to plaintiffs' arguments, they do not require pre arbitration discovery in this court in order to state a claim in London. This baseless assertion is belied by their detailed 29/30 page original and amended complaints and lengthy exhibits in this action.

Nor is the discovery demanded directed at the existence and formation of the arbitration agreement, the only issues presently and properly before this Court. Rather, Bielecki seeks discovery regarding his alleged "damages" in the way of unearned fees and commissions. There is no cause for this Court to permit discovery on the issue of damages, particularly where liability itself is so much in doubt. The very first issue before the London arbitrator will be whether the Club has any liability to Mr. Bielecki at all. If liability exists, which is disputed, the London arbitrator has ample authority to require such discovery, if any, as may be necessary to resolve any possible damages. The authority of the London arbitrator regarding discovery has been enhanced by the

3

stipulations provided by defendants at this Honorable Court's suggestion. (Bowles Aff., Exhibit 7)

The Court should grant Defendants' motions for stays of all claims asserted herein pending London arbitration between the American Club and plaintiffs.

## FACTS

1.    **Background**

    a)    **The Parties**

The named plaintiffs are Hughes Hooker & Co., of London (formerly a firm of English solicitors) and Hughes Hooker (Corespondents) S.A. of Greece (a related claims agency) (collectively "HHC"). Jacek Bielecki ("Mr. Bielecki") formerly an English solicitor and the former senior partner of Hughes Hooker & Co, Solicitors, asserts he was the sole equity of HHC. (Bowles Aff., ¶4)

The American Club is a non-profit mutual insurance association which provides marine indemnity insurance coverage to owners and operators of merchant vessels. SCB is the manager of the American Club. Mr. Hughes is currently Chairman and Chief Executive Office of SCB and the secretary of the American Club. Mr. Solarino is the President and Chief Operating Officer of SCB. Mr. McGowan was formerly the Chief Executive of SCB and the secretary of the American Club. (Bowles Aff., ¶5) The non-party defendants are agents of a disclosed principal, the American Club.

b)     **The Contract**

HHC and the American Club entered into an Agreement dated March 25, 1996 (the "Agreement") (Bowles Aff., Exhibit 1), which document speaks for itself.  HHC and the American Club are the sole parties to the Agreement.  Neither Mr. Bielecki nor SCB, nor Messrs. Hughes, Solarino and McGowan are parties to the Agreement.  (Bowles Aff., ¶6, Exhibit 1)  Thus, neither Mr. Bielecki nor the non-party defendants have or could have either any rights or obligations under the Agreement.

Under the Agreement, the parties set forth an outline for certain services HHC was to provide solely to the American Club, "subject always to [The American] Club's direction and control".  (Bowles Aff., ¶7, Exhibit 1, Clause 2).  Nothing in the Agreement even suggests that HHC was to provide any services to SCB or that SCB was to pay for services.  The Agreement also sets forth a general scheme for remuneration for HHC for those services to the American Club which remuneration "in any event may be reviewed from time to time as required by either party."  This Agreement was to last for one probationary year, with the option of being extended for a further period of four years, "save that [the] agreement may be terminated by 3 months notice by either party, or immediately in the event of gross negligence or other serious breach by either party." (Bowles Aff., ¶7, Exhibit 1, Clause 4)

2.     **The Arbitration Clause**

The Agreement includes an arbitration clause which (a) covers all of HHC's claims against the American Club, and moreover, (b) covers the subject matter of all of

5

HHC's claims against the non-party defendants.  This clause, which provides options only to the "defending party", and when exercised become binding on the parties and mandatory.  Clause 5, reads as follows:

> 5.  This Agreement is subject to American or English law and jurisdiction either in arbitration, before a single arbitrator, or before the regular courts, <u>at the option of the defending party</u>.

(Bowles Aff., ¶8; Exhibit 1, ¶5) (Emphasis added)

Clause 5 of the Agreement was personally drafted and proposed by Mr. Bielecki, a trained an English solicitor and the former senior partner of Hughes Hooker & Co., Solicitors.  (Bowles Aff., ¶9, Exhibit 1A and 1B)

3.    **The Performance Under the Contract**

Very briefly, HHC, represented the American Club for approximately two years, at which point that contractual relationship was terminated by the American Club, pursuant to Clause 4 of the Agreement.  There followed extensive discussions regarding HHC's alleged outstanding fees and commissions which were related to his (improper) assertions that he/HHC were "exclusive agents for the American Club in Greece. The essence of Mr. Bielecki's/HHC's original complaint in this Court is that HHC was "exclusive" agent for the American Club in Greece.  (Original Complaint ¶11, Exhibit 3) Indeed, in the original Agreement drafted Mr. Bielecki proposed that HHC be the American Club's "Exclusive" agent in Greece.  (Bowles Aff., Exhibits 1A and B) However, the American Club specifically rejected that proposal.  (See Mr. McGowan's letter dated March 21, 1996, Bowles Aff., Exhibit 1C.  See also Exhibit C to the amended

complaint.)   Paragraph 11 of the amended complaint does not include the "exclusive agent" assertion in paragraph 11 of the original compliant, but that baseless assertion remains in paragraphs 41, 46 and 84 of the amended complaint, Bowles Aff., Exhibit 3A. (Bowles Aff., ¶10)

As early as March 27, 2000, Mr. Bielecki was informed that the American Club opted that any disputes between it and HHC be resolved in London arbitration.  (Bowles Aff., ¶11, Exhibit 2 and 2A)

Until the service of the original complaint in April 2004, the American Club had not heard from Mr. Bielecki or HHC since about October 2000, and believed it had satisfactorily resolved HHC's claims.  (Bowles Aff., ¶12)

4.    **Plaintiffs' Amended Complaint**

Plaintiffs' amended complaint differs very little if at all from plaintiff's original compliant.   Both allege overlapping causes of action against the American Club, its mangers, SCB, and the past and present officers of SCB, all arising out of the performance of the Agreement between the Club and HHC.

Plaintiffs do not assert (1) single separate or independent cause of action against any of the individual non-party defendants, Messrs. Hughes, Solarino and McGowan or (2) any claim not arising under the Agreement. The only conduct complained of is the non-party defendants' proper rejection of Mr. Bielecki's improper demands for commissions he had not earned.

5.    **The Arbitration Demand**

By letter dated April 26, 2004, after the service of the original Complaint herein, the American Club, as the "defending party" duly and timely exercised its option under Clause 5 of the Agreement and demanded London arbitration of HHC's claims.  (Bowles Aff., ¶16; Exhibit 4)

Notwithstanding the facts (1) that Mr. Bielecki and HHC knew that the American Club had previously indicated it would opt for London arbitration (Bowles Aff., Exhibits 2 and 2A), and (2) that the arbitration clause clearly gave the American Club as the defending party that option, Mr. Bielecki filed the original complaint; and then by letter dated April 30, 2004 (Bowles Aff., Exhibit 5), refused the American Club's arbitration demand, making arguments which are contrary to the plain terms of Clause 5 of the Agreement.  (Bowles Aff., Exhibit 1)

## ARGUMENT

### POINT I

### PLAINTIFFS' CLAIMS AGAINST THE AMERICAN CLUB SHOULD BE STAYED PENDING LONDON ARBITRATION

Plaintiffs' claims against the American Club should be stayed pending arbitration in London pursuant to Clause 5 of the Agreement.

1.    **The Federal Arbitration Act Governs**

The question of whether HHC's claims are subject to arbitration is controlled by the FAA, 9 U.S.C. § 1 *et seq.* <u>Moses H. Cone Memorial Hospital v. Mercury</u>

Construction Corp., 460 U.S. 1, 24 (1983) ("Section 2 [of the FAA] is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary. The effect of the section is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act.").

Under the FAA, a court must stay its proceedings pending arbitration where a binding agreement exists that encompasses an issue referable to arbitration under that agreement. 9 U.S.C. § 3 provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

The FAA is mandatory. Once a binding agreement to arbitrate has been demonstrated, such as the Agreement, the court must stay the litigation and refer the parties to arbitration in accordance with the contract. See, e.g., Morrie & Shirless Mages Foundation v. Thrifty Corp., 916 F.2d 402, 405-6 (7th Cir. 1990) ("Under the terms of the FAA, district courts have no discretion to refuse a request for a stay and shall direct the parties to proceed to arbitration on issues covered by an arbitration agreement."). See also, Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395 (1967) ("Section 3

requires a federal court in which suit has been brought upon any issue referable to arbitration under an agreement in writing for such arbitration to stay the court action pending arbitration once it is satisfied that the issue is arbitrable under the agreement.").

By its terms, the Agreement is "subject to . . . arbitration, before a single arbitrator . . . at the option of the defending party." Each and every claim brought by HHC against both the American Club and the non-party defendants concerns the performance of the subject Agreement. Thus, each and every claim brought by HHC touches this Agreement. Without question, the claims against the American Club are mandatorily arbitrable.

The arbitration clause in the Agreement is a quintessential "broad" clause. See e.g., Lawson Fabrics, Inc. v. Akzona, Inc., 355 F. Supp. 1146, 1148 (S.D.N.Y.), aff'd without opinion, 486 F.2d 1394 (2d Cir. 1973) ("the courts have taken a liberal attitude in interpreting the scope of arbitration clauses. If the parties manifest an intent to arbitrate all disputes arising out of the contract as they did here, it makes no difference whether or not they were foreseeable at the time of agreement."). This is so even though some of plaintiff s causes of action purport to allege negligence, fraud, etc. As the Second Circuit has explained:

> In determining whether a particular claim falls within the scope of the parties' arbitration agreement, we focus on the factual allegations in the complaint rather than the legal causes of action asserted. If the allegations underlying the claims "touch matters" covered by the [underlying contract],

10

> then those claims must be arbitrated, whatever the legal labels attached to them.

Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840, 846 (2d Cir. 1987).

The United States Supreme Court has made clear, moreover, that when interpreting an arbitration clause, disputes must be referred to an arbitrator "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." United Steelworkers of America v. Warrior and Gulf Navigation Co., 363 U.S. 574, 582-83 (1960). "Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 24-25, 103 S. Ct. 927, 941-42, 74 L.Ed.2d 765 (1983). See also, Salim Oleochemicals, Inc. v. M/V SHROPSHIRE, 169 F. Supp. 2d 194 (S.D.N.Y. 2001), aff'd, 2002 U.S. App. LEXIS 14124 (2d Cir. 2002) (" . . . in light of the Federal Arbitration Act's ("FAA"), 9 U.S.C. § 1 et seq., clear policy favoring arbitration agreements, the Supreme Court has instructed that any doubts concerning arbitrability should be resolved in favor of arbitration, whether the problem at hand is the construction of statutory language itself or an allegation of waiver, delay, or a like defense to arbitrability").

This policy in favor of arbitration is even stronger in the context of international business transactions. Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 629-31, 105 S. Ct. 3346, 3355-56, 87 L. Ed. 2d 444 (1985); Scherk v. Alberto-Culver Co., 417 U.S. 506, 516-18, 94 S. Ct. 2449, 2455-57, 41 L. Ed. 2d 270 (1974)

(recognizing that the liberal federal arbitration policy applies with special force in the field of international commerce).

2. **The Arbitration Clause Is Also Enforceable Pursuant to the New York Convention**

The arbitration agreement is equally enforceable under the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, which has been implemented in the United States in Chapter 2 of the FAA, 9 U.S.C. § 201 *et seq.* (the "New York Convention"). Section 206 of the FAA provides that:

> A court having jurisdiction under this chapter may direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States.

A court's "scope of inquiry in considering a petition to compel arbitration under Chapter Two of the FAA is 'very limited.'" Smith/Enron Cogeneration Limited Partnership, Inc. v. Enron Int'l C.V., 198 F.3d 88, 92 (2d Cir. 1999), cert. denied, 531 U.S. 815 (2000). See also Dimercurio v. Sphere Drake, 202 F.3d 71, 74 at n. 2 (2d Cir. 2000) ("A Court in the United States faced with a request to refer a dispute governed by Chapter Two to arbitration performs a 'very limited inquiry' into whether an arbitration agreement exists and falls within the Convention's coverage."). Section 202 of the FAA defines the type of arbitration agreements that fall within the purview of the New York Convention:

> An arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract,

or agreement described in section 2 of this title, falls under the Convention. An agreement or award arising out of such a relationship which is entirely between citizens of the United States shall be deemed not to fall under the Convention unless that relationship involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states.

As the Smith/Enron court noted:

> The Convention and the implementing provisions of the FAA set forth four basis requirements for enforcement of arbitration agreements under the Convention: (1) there must be a written agreement, (2) it must provide for arbitration in the territory of a signatory of the convention; (3) the subject matter must be commercial; and (4) it cannot be entirely domestic in scope. Id.

In the present case, all of these criteria are easily met. First, there can be no dispute that the arbitration clause is contained in a written agreement. (Bowles Aff., Exhibit 1, Clause 5) As to the second requirement, the contract calls for arbitration in London, England at the "option of the defending party" which option the American Club has timely and properly exercised. England is a signatory to the Convention. 9 U.S.C. § 202. And as to the third and fourth requirements, the subject matter of the contract - i.e., HHC's services to the American Club - is indisputably both commercial and international in nature. Thus the third and fourth criteria are easily met.

3.    **Plaintiffs' Fraud Allegations Do Not Bar Enforcement of The Arbitration Clause**

Plaintiff's allegations of fraud do not warrant a different result. The law is clear that where a claim is otherwise subject to arbitration, allegations of fraud must be heard

13

by the arbitrator unless the allegations relate to the making of the arbitration clause itself. Prima Paint, 388 U.S. at 403-404.

While plaintiffs makes several (unsupported and unsupportable) allegations of fraud in their complaint, plaintiffs have not alleged that the arbitration clause itself was fraudulently made or included in the contract nor that any other issues of fraud surround the arbitration clause of the Agreement.  Indeed such claims could not reasonably be made as plaintiffs' senior partner, Mr. Bielecki, then a London solicitor, personally drafted and proposed the dispute resolution provisions of the Agreement, Clause 5. (Bowles Aff., ¶ 16)  Plaintiffs' fraud allegations therefore are no bar to a stay of its Claims against the American Club pending arbitration in London as required by the Agreement.

For the foregoing reasons, this Court should grant the American Club's motion to stay plaintiffs' claims against it in this action pending arbitration in London.

## POINT II

### A STAY OF PLAINTIFFS' ACTION AGAINST THE NON-PARTY DEFENDANTS IS APPROPRIATE UNDER THE DOCTRINE OF PARALLEL-PROCEEDING ABSTENTION

Plaintiffs' claims in this action against the non-party defendants should also be stayed pending arbitration of plaintiffs' claims against the American Club.

Plaintiffs' primary claims under the agreement are against the American Club. Those claims, as is fully detailed in Point I above, are subject to mandatory arbitration in

14

London. As is detailed in the Facts section above, and as is evident from plaintiffs' complaint, all of plaintiffs' allegations against all of the defendants involve essentially one question: whether plaintiffs are entitled to further compensation pursuant to the Agreement which was terminated over six years ago, and for which HHC was more than adequately compensated. All of plaintiffs' other claims are wholly identical to and fully derivative of plaintiffs' primary arbitrable claims. Depending on the outcome of the London arbitration, these derivative claims should become wholly moot[1].

As Mr. Justice Cardozo stated in <u>Landis v. North American Co.</u>, 299 U.S. 248, 254, 57 S.Ct. 163, 166, 81 L. Ed. 153 (1936):

> [T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cause on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.

In what appears to be the earliest case granting a stay of litigation pending completion of arbitration proceedings on related issues, in <u>Nederlandse Erts-Tankersmaatschappij, N.V. v. Isbrandtsen Co., Inc.</u>, 339 F.2d 440, 441-42 (2d Cir. 1964), the Second Circuit relied upon <u>Landis</u> in holding that the district court below had the

---

[1] Plaintiffs' claims against the non-party defendants were likely belatedly created by Mr. Bielecki solely as a makeweight to try to keep the case in this court. The non-party defendants were at all times the agents of a disclosed principal. They did nothing more than deny Mr. Bielecki's/HHC's improper claims for commissions he did not earn. As will be shown in the London arbitration, there is no merit to any of plaintiffs' claims against either the American Club or the non-party defendants.

power to stay a suit brought by a creditor against a guarantor pending London arbitration of the creditor's claims against the debtor, stating:

> [T]he district court had inherent power to grant the requested stay. While the power to stay has ordinarily been exercised in situations in which another proceeding was pending in the state courts [citation omitted], a stay may also be appropriate where the pending proceeding is an arbitration in which issues involved in the case may be determined.

The principle stated in Isbrandtsen about the appropriateness of granting a stay of a suit where issues in that suit may be resolved in a pending arbitration has been consistently followed in the Second Circuit for forty years. WorldCrisa Corp. v. Armstrong, 129 F.3d 71, 76 (2d Cir. 1997); Citrus Marketing Board of Israel v. J. Lauritzen A/S, 943 F.2d 220, 225 (2d Cir. 1991); Sierra Rutile Ltd. v. Katz, 937 F.2d 743, 750 (2d Cir. 1991); Sea Spray Holding, Ltd. v. Pali Financial Group, Inc., 269 F. Supp. 2d 356, 366 (S.D.N.Y. 2003).

The approach taken in Isbrandtsen has been adopted by the Seventh Circuit in IDS Life Ins. Co. v. Sunamerica, Inc., 103 F.3d 524, 530 (7th Cir. 1996), in which Judge Posner noted that, where a party to an arbitration agreement attempts to avoid that agreement by suing a related party with which it has no arbitration agreement in the hope that the claims will be adjudicated first and have preclusive effect in the arbitration,

> [s]uch a maneuver should not be allowed to succeed [and] . . . is blocked . . . by the principles of parallel-proceeding abstention, which . . . would require the court to stay the proceedings before it and let the arbitration go forward unimpeded.

Clearly, plaintiffs are attempting a prohibited "maneuver" to impede the London arbitration.

Under the principle of parallel-proceeding abstention, the party seeking the stay of litigation pending completion of an arbitration on related issues has the burden of establishing that a stay is warranted. As the Second Circuit stated in Nederlandse, 339 F.2d at 442:

> Without attempting to list all relevant factors, we point out that the defendants should demonstrate to the satisfaction of the court that they have not taken nor will take any steps to hamper the progress of the arbitration proceeding, that the arbitration may be expected to conclude within a reasonable time, and that such delay as may occur will not work undue hardship.

These factors have been demonstrated in the present case, where the plaintiffs' entire claim respecting their performance under the Agreement can be promptly and fully resolved in the London arbitration with the American Club.

A.    **The Non-Party Defendants Have Not and Will Not Take Steps to Hamper the Progress of the Arbitration**

The non-party defendants are not a party to the contract between the American Club and HHC nor to the arbitration agreement contained therein. The non-party defendants have no standing or ability to interfere with the London arbitration which has been demanded by the American Club and the non-party defendants will not impede that arbitration. Quite the contrary! The non-party defendants, although not required to, have, at the suggestion of this Honorable Court, agreed to enhance the power of the

17

London arbitrator and agreed to provide evidence in London as may be ordered by the arbitrator. (See Bowles Aff., ¶20, Ex. 7)  Defendants, of course, have reserved all of their other rights and defenses in said London arbitration.

On the other hand, the plaintiffs' actions, if a stay does not issue as against the non-parties, can potentially interfere with and impede the mandatory London arbitration.

B.    **The Arbitration Proceedings Will Conclude Within a Reasonable Time**

Arbitration is generally considered to be an expeditious means for resolving disputes.  SCAC Transport (USA), Inc. v. S.S. DANOS, 845 F.2d 1157, 1163 (2d Cir. 1988) (recognizing arbitration to be an efficient means of dispute resolution).  There is no basis upon which to conclude that the London arbitration will not proceed expeditiously. The American Club timely made its demand for arbitration before answering the complaint.  Plaintiffs obviously have it within their power to see to it that the London arbitration goes forward expeditiously and to press for a speedy resolution of its claims. There is no basis upon which to conclude that any party other than HHC is hindering the progress of the London arbitration.

C.    **Any Delay Will Not Work Undue Hardship**

A stay of this matter pending the conclusion of the London arbitration will not result in any material delay.  No prejudice would befall plaintiffs by staying their claims in this action against the non-party defendants pending the outcome of the London arbitration.  In particular, plaintiffs cannot be heard to complain about any possible delay given that they waited to file its complaint until six years after the contract was

terminated and nearly five years after the American Club announced its final decision on plaintiffs' purported claims and they have yet to commence an arbitration in London although they have known since March 2000 that the American Club opted for that method of dispute resolution granted by plaintiffs in Clause 5 of the Agreement.

In any event, as noted above, plaintiffs' primary claims will proceed in London arbitration in accordance with the terms of the governing agreement. The fact that some issues might ultimately bear on plaintiffs' claims against the non-party defendants which is not likely might first be resolved in the arbitration rather than before this Court will not prejudice plaintiffs given that HHC not only agreed to arbitration as a term of the Agreement, but its principal, Mr. Bielecki, drafted the language of Clause 5 of the Agreement. (Bowles Aff., ¶9, Exs. 1A and 1B)

To the contrary, the principal risk of prejudice is to the American Club if the remaining claims in this Court are not stayed. By simultaneously pursuing this action in New York against the non-party defendants, plaintiffs seek to circumvent the arbitration process which they expressly agreed to follow, if opted for by the "defending party". Indeed, the logistics of permitting this action to proceed simultaneously with the London arbitration would quickly become quite complicated, and severely prejudice the defendants. Plaintiffs seek to obtain discovery from the American Club and the non-parties here in respect of their damages claims against the non-party defendants, which discovery is premature at best for the reasons outlined in the Bowles Aff., ¶10. And even assuming plaintiffs were not permitted to obtain discovery directly from the American

Club in this action (as it should not be given that its claim is subject to London arbitration) the American Club would nevertheless be required to continue to participate in the New York litigation so long as other discovery is taking place (i.e., discovery of the non-party defendants) in order to protect its own interests. Granting any such discovery, especially on plaintiffs' damages claim, would defeat the entire purpose of staying plaintiffs' claims against it pending arbitration in the first place. The first issue before the London arbitration is whether defendant, the American Club, has any legal liability to plaintiffs. If it does not, there is no basis for any discovery on damages. If the American Club has any such liability, the London arbitrator has the authority to also resolve damages, if any. In the circumstances, plaintiffs have no basis to contend that a stay of its action against the non-party defendants in New York pending completion of the London arbitration will cause any undue hardship.

## POINT III

### A STAY OF PLAINTIFF'S ACTION AGAINST THE NON-PARTY DEFENDANTS IS AUTHORIZED BY SECTION 3 OF THE U.S. ARBITRATION ACT

Section 3 of the FAA provides:

> **§3. Stay of proceedings where issue therein referable to arbitration**
>
> If any suit or proceeding be brought in any of the courts of the United States *upon any issue* referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being *satisfied that the issue involved in such suit or proceeding* is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has

20

> been had in accordance with the terms of the agreement,
> providing the applicant for the stay is not in default in
> proceeding with such arbitration.

(Emphasis added.)

Several Circuit courts have applied a commonsense reading of 9 U.S.C. § 3,

holding that, if the action concerns an "issue referable to arbitration", the action should be

stayed even if the litigation is between non-arbitrating parties:

> "Section 3 of the Arbitration Act, which permits a court to
> stay "<u>any</u> suit…brought in any of the courts of the United
> States upon <u>any</u> issue referable to arbitration" is broad enough
> to permit the stay of litigation between nonarbitrating parties
> as long as that lawsuit is based on issues referable to
> arbitration under an arbitration agreement governed by the
> Arbitration Act."

<u>Contracting Northwest, Inc. v. City of Fredericksburg</u>, 713 F.2d 382, 287 (8th Cir. 1983);

<u>American Home Assurance Co. v. Vecco Concrete Constr. Co., Inc. of Virginia</u>, 629 F.2d

961, 964 (4th Cir. 1980).    See also, <u>Subway Equipment Leasing Corp. v. Doctor's</u>

<u>Associates, Inc.</u>, 169 F.3d 324, 329 (5th Cir. 1999).

The status of this analysis in the Second Circuit is under development.  In 1964,

the Second Circuit first held in <u>Nederlandse</u>, 339 F.2d at 441, that a stay could not be

granted where the parties to the litigation were not parties to the arbitration agreement.

However that decision long preceded the Supreme Court's declaration of a "liberal

federal policy favoring arbitration".    <u>Moses H. Cone Mem. Hosp. v. Mercury Constr.</u>

<u>Corp.</u>, 460 U.S. 1, 24, 74 L.Ed.2d 765, 103 S.Ct. 927, 941 (1983); <u>Dean Witter Reynolds,</u>

<u>Inc. v. Byrd</u>, 470 U.S. 213, 218-21, 84 L.Ed. 2d 158, 105 S.Ct. 1238 (1985); <u>Mitsubishi</u>

Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 625, 105 S.Ct., 3346, 87

L.Ed. 2d 444 (1985).

More recently, in McCowan v. Sears, Roebuck & Co., 908 F.2d 1099, 1106 (2d

Cir.) cert. denied, 498 U.S. 897, 111 S.Ct. 250, 112 L.Ed. 2d 209 (1990), the Second

Circuit noted that a "commonsense reading" of Section 3 "suggests that if there is a

federal action 'upon' an 'issue referable to arbitration' by the terms of an arbitration

agreement, then the federal court must 'stay the trial of the action until such arbitration

has been had in accordance with the terms of the agreement.'"  In that case the plaintiff

filed two separate lawsuits arising from the same transaction, one against Dean Witter

and one against Sears.  There was an arbitration agreement between plaintiff and Dean

Witter but not between plaintiff and Sears.  Concluding that there was a single

"controversy" at issue and that plaintiff's claim against Sears required a showing of

liability against Dean Witter, the court stayed the suit against Sears on the ground that

Dean Witter's

> contractual right to arbitrate 'any controversy' arising out of
> or relating to the contract between the parties would be
> seriously impaired if [the second suit] were not stayed
> pending arbitration.  Under these circumstances, we believe
> that Dean Witter has a right to the mandatory stay afforded by
> section 3 of the Act. Id. at 1107.

Subsequently, in Citrus Marketing Bd. Of Israel v. J. Lauritzen A/S, 943 F.2d 220,

224 (2d Cir. 1991), the Second Circuit noted that the "intervening Supreme Court

authorities might have provided a basis for reconsideration of Nederlandse, despite the

22

normally binding force of prior Second Circuit precedent". Nevertheless, because McCowan "made no reference to Nederlandse," and because Nederlandse had since been reaffirmed in Sierra Rutile Ltd. v. Katz, 937 F.2d 743, 748 (2d Cir. 1991), the Second Circuit again adhered to Nederlandse. However, decisions in the Southern District of New York recently decided suggest that in this Circuit a stay under § 3 may still be available. Sea Spray Holdings, Ltd. v. Pali Financial Group, Inc., 269 F. Supp. 2d 356, 366 (S.D.N.Y. 2003) (granting a stay pursuant to its inherent power to control its docket and noting: "Furthermore, developing authority suggests that the coverage of § 3 itself might extend to encompass nonparties to arbitration agreements with relationships or interests in the arbitrable dispute, apparently in light of the district court's inherent authority to otherwise achieve the same result".) See also, Danisco A/S v. Novo Nordisk, 2003 U.S. Dist. LEXIS 1842 (S.D.N.Y. 2003).

In the present case, plaintiffs' claims against the American Club, its managers, and past and present officers of the American Club's managers are identical. They all arise out of or relate to the American Club's same alleged breach of contract. That issue is clearly subject to arbitration under the terms of the Agreement. In the circumstances, as there is but a single "controversy" and "the issue involved in [this] suit or proceeding is referable to arbitration", a stay is authorized under Section 3 of the FAA. Morrie & Shirlee Mages Foundation v. Thrifty Corp., 916 F.2d 402, 407 (7th Cir. 1990); Contracting Northwest, Inc. v. City of Fredericksburg, 713 F.2d 283, 387 (8th Cir. 1983); American Home Assurance Co. v. Vecco Concrete Constr. Co., Inc. of Virginia, 629 F.2d

961, 964 (4th Cir. 1980); <u>Subway Equipment Leasing Corp. v. Doctor's Associates, Inc.,</u>

169 F.3d 324, 329 (5th Cir. 1999).

## POINT IV

### THE COURT'S STAY ORDER IS NECESSARY<br>AND PROPER TO AVOID PREJUDICE<br>TO THE AMERICAN CLUB'S RIGHT TO<br><u>ARBITRATION AND TO THE NON-PARTY DEFENDANTS</u>

The legislative history of the FAA establishes that the purpose behind its passage was to ensure judicial enforcement of privately made arbitration agreements. <u>Dean Witter Reynolds, Inc. v. Byrd,</u> 470 U.S. 213, 219, 84 L.Ed. 2d 158, 105 S.Ct. 1238, 1242 (1985). Thus, the availability of a stay of litigation on issues "referable to arbitration", whether under Section 3 of the FAA or by virtue of the court's inherent power to control its docket, as recognized by <u>Nederlandse,</u> is a necessary tool to further the aims of the FAA.

In the present case, the plaintiffs attempt to circumvent HHC's arbitration agreement with the American Club by asserting the same claims against the non-party defendants, all relating to the same alleged breach of contract. It is proper to stay this action against the non-party defendants to avoid prejudice to the agreed arbitration of all such claims.

If HHC has meritorious claims respecting the alleged breach of the Agreement by the non-parties, the American Club's agents, which is denied, such claims will be upheld in its London arbitration with the American Club and they will be awarded damages.

24

This will obviate any further proceedings against the non-party defendants acting on behalf of the American Club.

On the other hand, if HHC's claims against the American Club are held not to be meritorious, which is likely, the award of the London arbitrator should have preclusive effect upon any claims by the plaintiffs in New York against the American Club's agents, the non-party defendants.

While the U.S. Supreme Court expressly left undecided the issue of whether an arbitrator's decision is always entitled to a preclusive effect, Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 223, 84 L.Ed.2d 158, 105 S.Ct. 1238 (1985), New York federal and state courts have held that arbitration decisions can serve as the basis for collateral estoppel. Jacobson v. Fireman's Fund Ins. Co., 111 F.3d 261, 267-68 (2d Cir. 1997); Bogulslavsky v. Kaplan, 159 F.3d 715, 720 (2d Cir. 1998); Benjamin v. Traffic Executive Association, 869 F.2d 107, 114 (2d Cir. 1989); See also American Renaissance Lines, Inc. v. Saxis S.S. Co., 502 F.2d 674, 679 (2d Cir. 1974). Moreover, the rule of collateral estoppel may be applied with respect to nonparties to an arbitration such as the non-party defendants in this case. I. Appel Corp. v. Katz, 1999 U.S. Dist. LEXIS 6744 at *3 (S.D.N.Y. 1999).

"The courts in this district have consistently granted stays pending arbitration where the nonarbitrable issues overlap the arbitrable issues, thus minimizing inconsistent results and conserving judicial resources." Midland Walwyn Capital, Inc. v. Spear,

25

Leeds & Kellogg, 1992 U.S. Dist. LEXIS 14289 at *4 (S.D.N.Y. 1992) (citing Builders

Federal (Hong Kong) Ltd. v. Turner Construction, 655 F. Supp. 1400 1407 (S.D.N.Y.

1987); Hikers Industries, Inc. v. William Stuart Industries (Far East) Ltd., 640 F. Supp.

175, 177 (S.D.N.Y. 1986); Dale Metals Corp. v. Kiwa Chemical Industry Co., 442 F.

Supp. 78, 81 (S.D.N.Y. 1977); Societe Nationale Pour La Recherche v. General Tire and

Rubber Co., 430 F. Supp. 1332, 1334 (S.D.N.Y. 1977); Lawson Fabrics, Inc. v. Akzona,

Inc., 355 F. Supp. 1146, 1151 (S.D.N.Y), aff'd, 486 F.2d 1394 (2d Cir. 1973)).  See also

Nederlandse, 339 F.2d at 441042; WorldCrisa, 129 F.3d at 76; Citrus, 943 F.2d at 225;

The Provident Bank v. Bernards, 141 F. Supp. 2d 310, 319 (E.D.N.Y. 2001); Whitney v.

Mizel, 2001 U.S. Dist. LEXIS 12565 (D. Ct. 2001); The Orange Chicken, L.L.C. v.

Nambe Mills, Inc., 2000 U.S. Dist. LEXIS 18214 at *31, n.10, (S.D.N.Y. 2000); Lafarge

Canada, Inc. v. Bank of China, 2000 U.S. Dist. LEXIS 14253 at *12-*15 (S.D.N.Y.

2000); I. Appel, 1999 U.S. Dist. LEXIS 6744 at *11.  [Here, of course, the claims against

the American Club and its agents are the same.]

The New York State courts have also granted stays in the same circumstances.

See, e.g., a copy of an unpublished but similar and analogous decision dated May 6, 2004

of Sea Trade Maritime Corp. v. Hellenic Mutual War Risks Assoc. (Bermuda) Ltd. in

which the Supreme Court of the State of New York Appellate Division, First Department

affirmed orders which granted a stay of the action (a) pending resolution of a contracted

for London arbitration proceeding between the plaintiff and Hellenic and (b) with respect

to all parties, even those not contractually bound by the arbitration clause, "since the

26

claims asserted by plaintiff against reinsurers, reinsurance brokers, their directors and employees and derivative claims 'arising out of or in connection with' the contract of insurance and thus fall within the ambit of the arbitration provision." A copy of this decision is attached as Exhibit 6 to the Bowles Aff.

This Court, too, should stay this action respecting the non-party defendants.

## CONCLUSIONS

For the foregoing reasons, the American Club's motion to stay plaintiffs' claims against it pending arbitration in London should be granted. The non-party defendants' motion to stay the balance of plaintiffs' duplicative claims in this action pending the outcome of the arbitration should also be granted. The American Club and the non-party defendants should be granted such further and other relief as the Court deems just and proper, including the costs of responding to this patently vexatious lawsuit and the redundant motion practice which has ensued. Those costs, to date, exceed $35,000, and the total amount can be calculated shortly after this Court's decision.

Dated:      New York, New York
            February 28, 2005

                              Respectfully submitted,

                              NOURSE & BOWLES, LLP
                              Attorneys for Defendants

                              By:_____
                                   Lawrence J. Bowles, Esq. (LB 5950)
                                   One Exchange Plaza
                                   At 55 Broadway
                                   New York, NY  10006-3030
                                   (212) 952-6200

27

TO:    James M. Maloney, Esq.
       33 Bayview Avenue
       Port Washington, New York 11050