NOURSE & BOWLES, LLP
Attorneys for Defendants
One Exchange Plaza
At 55 Broadway
New York, NY  10006-3030
(212) 952-6200

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
                                                       :
Hughes, Hooker & Co. and                               :
Hughes, Hooker (Correspondents) S.A.                   :          04 CV 01859 (SHS)
                                                       :
                        Plaintiffs,                    :
                                                       :
- against -                                            :
                                                       :
American Steamship Owners Mutual                       :
Protection and Indemnity Association, Inc.             :
Shipowners Claims Bureau                               :
Joseph E.M. Hughes                                     :
Thomas J. McGowan                                      :
Vincent J. Solarino                                    :
                                                       :
                        Defendants.                    :
-------------------------------------------------------X

**REPLY MEMORANDUM OF LAW IN SUPPORT
OF DEFENDANTS' RENEWED MOTIONS FOR
AN ORDER STAYING THIS ACTION PENDING
ARBITRATION IN LONDON AND IN OPPOSITION
TO PLAINTIFFS' CONDITIONAL CROSS MOTION**

Nourse & Bowles, LLP
One Exchange Plaza
At 55 Broadway
New York, New York 10006
(212) 952-6200

TABLE OF CONTENTS

PRELIMINARY STATEMENT .............................................................................. 1

POINT I
THE DISPUTE RESOLUTION CLAUSE IN THIS MATTER IS
UNAMBIGUOUS AND THE PAROL EVIDENCE RULE BARS
CONSIDERATION OF THE EXTENSIVE EXTRANEOUS MATTERS
IMPROPERLY URGED UPON THE COURT BY PLAINTIFFS ......................... 3

POINT II
THE PLAINTIFFS DELIBERATELY ATTEMPT TO MISLEAD THE COURT
AS TO THE IDENTITY AND SUBSTANCE OF THE "ACTUAL
AGREEMENT" ........................................................................................................ 5

POINT III
MR. BIELECKI WAS THE AUTHOR OF THE DISPUTE RESOLUTION
CLAUSE AND APPLICATION OF THE CONTRA PROFERENTEM RULE IS
WARRANTED ........................................................................................................ 8

POINT IV
DEFENDANTS HAVE MET THE REQUIREMENTS FOR A STAY OF THE
ACTION AGAINST THE INDIVIDUAL DEFENDANTS .................................... 9

        a. The Claims Against the Individual Defendants Are Entirely
        Derivative of The Claim Against the American Club ............................ 9

        b. Plaintiffs Have Not Shown That Defendants Have Acted to Delay
        the Arbitration ...................................................................................... 10

POINT V
PLAINTIFFS ARE NOT ENTITLED TO DISCOVERY HERE IN AID OF
ARBITRATION IN ENGLAND ............................................................................ 12

CONCLUSIONS .................................................................................................... 14

NOURSE & BOWLES, LLP
Attorneys for Defendants
One Exchange Plaza
At 55 Broadway
New York, NY  10006-3030
(212) 952-6200

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
                                             :

Hughes, Hooker & Co. and            :
Hughes, Hooker (Correspondents) S.A.   :       04 CV 01859 (SHS)
                                             :

                       Plaintiffs,     :
                                           :

- against -                               :
                                         :

American Steamship Owners Mutual     :
Protection and Indemnity Association, Inc.   :
Shipowners Claims Bureau            :
Joseph E.M. Hughes                 :
Thomas J. McGowan               :
Vincent J. Solarino                 :
                                         :

                    Defendants.    :
--------------------------------------------------------X

**REPLY MEMORANDUM OF LAW IN SUPPORT
OF DEFENDANTS' RENEWED MOTIONS FOR
AN ORDER STAYING THIS ACTION PENDING
ARBITRATION IN LONDON AND IN OPPOSITION
TO PLAINTIFFS' CONDITIONAL CROSS MOTION**

**<u>PRELIMINARY STATEMENT</u>**

      Defendant American Steamship Owners Mutual Protection & Indemnity

Association, Inc. (the "American Club" or "Club") submits this Reply

Memorandum of Law in support of its renewed motion for an Order under Sections 3 and 206 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §1 *et seq.*, staying this action as against it pending arbitration in London pursuant to a written agreement between the American Club and plaintiffs Hughes Hooker & Co., of London and Hughes Hooker (Correspondents) S.A.

Defendants Shipowners Claims Bureau ("SCB"), Joseph E.M. Hughes ("Mr. Hughes"), Thomas McGowan ("Mr. McGowan"), Vincent J. Solarino ("Mr. Solarino"), who are not parties to the agreement in dispute (collectively "the non-party defendants") submit this Reply Memorandum of Law in support of their renewed motion for an Order staying this action as against them pending the above arbitration in London.

Defendants also submit this Memorandum in Opposition to Plaintiffs' conditional cross motion improperly seeking discovery here in aid of foreign arbitration proceedings.

To the degree this application represents renewal of their prior application, Defendants refer to and incorporate by reference all their prior submissions.

**POINT I**

**THE DISPUTE RESOLUTION CLAUSE IN
THIS MATTER IS UNAMBIGUOUS AND THE
PAROL EVIDENCE RULE BARS
CONSIDERATION OF THE EXTENSIVE
EXTRANEOUS MATTERS IMPROPERLY URGED
UPON THE COURT BY PLAINTIFFS**

The vast majority of the material contained in Mr. Bielecki's latest declaration dated March 28, 2005 (the "Bielecki Dec.") is addressed to the merits of the underlying dispute and, as such, is beyond the scope of this Court's concern on a motion for a stay pending arbitration. See, Defendants' Memorandum in Support of their renewed motions dated February 28, 2005, p. 12.

So much of the Bielecki Declaration as purports to parse and interpret the dispute resolution clause in the contract by reference to materials outside of the four corners of the agreement should be disregarded as inadmissible as a matter of law.

Under New York law, "It is axiomatic that a contract is to be interpreted so as to give effect to the intention of the parties as expressed in the unequivocal language employed." *Morlee Sales Corp. v. Manufacturers Trust Co.*, 9 N.Y.2d 16, 19, 172 N.E.2d 280, 282 (1961) (citing *Green v. Doniger*, 300 N.Y. 238, 90 N.E.2d 56 (1949); *Harigan Cas. Co.,* 227 N.Y. 175 (1919)). A court "may not by construction add or excise terms, nor distort the meaning of those used and thereby

make a new contract for the parties under the guise of interpreting the writing."

*Morlee*, 9 N.Y. 2d at 19 (citations and internal quotation marks omitted).

"Evidence outside the four corners of the document as to what was really intended but unstated or misstated is generally inadmissible to add to or vary the writing." *W.W.W. Assocs., Inc. v. Giancontieri*, 77 N.Y.2d 157, 566 N.E.2d 639, 642 (1990). A court may consider extrinsic evidence of the parties' intent if the contract is ambiguous, but such "evidence may not be used to vary or contradict the language of the contract, but only to interpret it so as to resolve the ambiguity." *Shearson Lehman Bros. Holdings, Inc. v. Schmertzler*, 116 A.D.2d 216, 236, 500 N.Y.S.2d 512, 525 (1st Dep't 1986); *see also Computer Assocs. Int'l v. U.S. Balloon Mfg. Co.*, 10 A.D.3d 699, 700, 782 N.Y.S.2d 117, 118 (2d Dep't 2004) (noting same).

There is nothing ambiguous about the dispute resolution clause at issue in this matter. It provides as follows:

> 5. This Agreement is subject to American or English law and jurisdiction either in arbitration, before a single arbitrator, or before the regular courts, at the option of the defending party.

The meaning of Clause 5 is clear. The defending party has the option of choosing the jurisdiction and the law governing the disputes, as well as the option of arbitration or court proceedings. Here, the Club as the defending party has

4

opted for English law and jurisdiction, and arbitration, as is its right. Mr. Bielecki's tortured constructions of the clause designed to frustrate that right are simply that, tortured and unpersuasive. The Court should enforce the Club's options pursuant to Clause 5 without being drawn into the subjective argument and extraneous material improperly urged upon the Court by Mr. Bielecki.

## II

### THE PLAINTIFFS DELIBERATELY ATTEMPT TO MISLEAD THE COURT AS TO THE IDENTITY AND SUBSTANCE OF THE "ACTUAL AGREEMENT"

A significant portion of plaintiffs' opposition is devoted to the argument that the Agreement annexed to Mr. Bowles' Affidavit as Exhibit "1" is not the "Actual Agreement" because Mr. McGowan allegedly altered the Agreement "improperly" after the fact by alterations to Clause 4, which dealt with termination rights. Mr. Bielecki boldly states:

48. I deny that the actual agreement is that document exhibited by Mr. Bowles as Exhibit 1.

49. The actual agreement is that signed by HH on 25th March 1996 and referred to at Exhibit C to the amended Complaint dated December 17, 2004.

50. The Agreement was finalised on the 25th March 1996 and I wrote to McGowan saying so. A true copy of said correspondence is attached hereto as Exhibit 11.

5

51. HH then started work under the final Agreement and on April 3, 1996 I had a telephone conversation with Hughes and recorded what was aid in a memorandum on the same day. I said at paragraph 2 "JO ASKED WHETHER I HAD HEARD FROM TOM. I SAID I HAD AND HAD ACCEPTED TOM'S AMENDMENTS TO THE AGREEMENT. ENGROSSED IT AND SENT IT BACK SIGNED HE SAID HE WILL GET A COPY FROM TOM (NOTE A COPY WAS ALSO SENT SEPARATELY TO JO!!!!!!!!!!) A true copy of said memorandum is attached hereto as Exhibit 12.

52. Then, a full 5 days later on April 8, 1996, some two weeks after the Agreement had been finalised, McGowan wanted to change it by fundamentally altering Clause 4 to which HH did not agree. Attached hereto as Exhibit 13 is a true copy of McGowan's fax of April 8, 1996 and the HH signed Agreement with the later unlawfully added McGowan manuscript alterations thereon.

(Emphasis added)

Mr. Bielecki's statements are demonstrably false, as any comparison of the various drafts of the Agreement exchanged between March 25, 1996 and April 8, 1996 easily shows.

Mr. Bielecki drafted and transmitted a form of agreement to Mr. McGowan dated March 25, 1996, which contained a proposed termination clause (Clause 4) (Bielecki Dec. Ex. 11)

Mr. McGowan replied to that draft on April 8, 1996 with his proposed "final revisions" including a revision to the termination clause (Clause 4). Mr.

6

McGowan proposed adding "by either party or immediately" in the fourth line of Clause 4. (Bielecki Dec. Ex. 13)

Mr. Bielecki who had the choice whether to accept or reject Mr. McGowan's proposed "final revisions", then amended the draft agreement to include Mr. McGowan's revisions to Clause 4. Paragraph 4 of Exhibit "1" to the Bowles Affidavit clearly contains the typewritten words "by either party or immediately" in its fourth line as proposed by Mr. McGowan on April 8th. Thus, contrary to Mr. Bielecki's and plaintiffs' assertions, they unquestionably agreed to Mr. McGowan's proposed "final revisions".

Mr. Bielecki then reexecuted the modified agreement, retaining the March 25, 1996 date and sent it to Mr. McGowan. It is that document which is annexed to the Bowles Affidavit as Exhibit "1". Exhibit "1" is the only version of the Agreement ever signed on behalf of both the American Club and Plaintiffs.

Defendants respectfully submit that Mr. Bielecki has deliberately attempted to mislead the court with patently false allegations of improper conduct by Mr. McGowan for the purpose of bolstering plaintiffs' claims of wrongdoing against the non-party defendants. Mr. Bielecki's patently false arguments about Clause 4 are typical of his disregard of his obligations to this court under Rule 11, Fed. R. Civ. P. and otherwise. Mr. Bielecki's consistently improper conduct has

7

vexatiously multiplied these proceedings and caused great, unnecessary expense to defendants.

**III**

**MR. BIELECKI WAS THE AUTHOR OF
THE DISPUTE RESOLUTION CLAUSE AND
APPLICATION OF THE CONTRA
<u>PROFERENTEM RULE IS WARRANTED</u>**

Mr. Bielecki advances the novel argument that he "could not have been" the author of the dispute resolution clause, Clause 5 (the terms of which remained the <u>same</u> in every draft of the agreement he sent to Mr. McGowan) because, he asserts, as an Englishman, he could not possibly have drafted a clause as barbarously drafted (an "abomination") as the dispute resolution clause unless he was under the "influence" if not control, of an American.  Bielecki Declaration ¶11, 12, 13.

Mr. Bielecki again attempts to mislead the court with absolutely false argument.  There is no reason to believe that anyone but Mr. Bielecki drafted Clause 5.  Indeed, on November 14, 1995, Mr. Bielecki sent the first draft of the agreement, containing Clause 5 to Mr. McGowan "for your approval".  (Bowles Affidavit Exhibit "1A")  Tellingly absent from that or any other contemporaneous communication is any suggestion that Mr. McGowan influenced or controlled the language of Clause 5.

Nor does the fact that "London" is not specified as the place of arbitration in the event English law, jurisdiction and arbitration are chosen genuinely add to the discussion. At the time he drafted the agreement, Mr. Bielecki's office was in London and London is the customary center of arbitration in England. The fact remains that Mr. Bielecki proposed the only form of the dispute resolution clause ever included in any version of the agreement. Accordingly, if there is any ambiguity in the dispute resolution clause, which is denied, Clause 5 should be construed against the Plaintiffs. *See Computer Assocs. Int'l v. U.S. Balloon Mfg. Co.,* 10 A.D.3d 699, 700, 782 N.Y.S.2d 117, 118 (2d Dep't 2004)

## IV

### DEFENDANTS HAVE MET THE REQUIREMENTS FOR A STAY OF THE ACTION AGAINST THE INDIVIDUAL DEFENDANTS

a.    The Claims Against the Individual Defendants Are Entirely Derivative of The Claim Against the American Club.

Plaintiffs' contention that their fraud claims are independent of the contract claim is plainly incorrect. If, as Defendants contend, Mr. Bielecki's contract was non-exclusive and/or the Club was within its rights to cancel the contract when it did, then nothing the individual defendants are alleged to have done (or not done)

9

is or could be wrongful. The plaintiffs' claims against the individual defendants rise or fall with plaintiffs' breach of contract claims against the Club.

In this regard, it should be noted that contrary to his assertions, Mr. Bielecki is not being asked to "stand aside while [another] litigant in another [matter] settles the rule of law that will define the rights of both". Plaintiffs' Memorandum p. 8. In fact, plaintiffs/Mr. Bielecki will be the litigants in the London arbitration proceeding. Therefore, they will have a full and fair opportunity to litigate the contractual dispute which serves as the predicate for their tort claims against the individual defendants. Moreover, plaintiffs/Mr. Bielecki will have at their disposal all of the materials they characterize as the "copious evidence in the record ... that indicates tortious behavior" (Plaintiffs' Memo p. 10) to try to demonstrate unfair dealing etc. by Defendants Hughes, McGowan and Solarino. If necessary, those individuals will testify in the London arbitration. In these circumstances, a stay is warranted.

b.    Plaintiffs Have Not Shown That Defendants Have Acted
      to Delay the Arbitration

Mr. Bielecki's suggestion that the Club has tried to frustrate the London arbitration, or that it was incumbent upon the Club to commence London arbitration in respect of plaintiff's/his long delayed claims (since October 2000) is

10

contradicted by his own prior correspondence, and contrary to English law and practice.

As Mr. Bielecki's letter of March 29, 2000 (Bowles Affidavit Ex. "2A") admits, the Club's letter of March 27, 2000 (Bowles Affidavit Ex. "2") was not itself a demand for arbitration, and could not be because Mr. Bielecki had not yet made them a "defending party". One cannot respond to a claim that is not pressed. It is plaintiffs/Mr. Bielecki who assert they are possessed of claims against the American Club and it was and remains their burden to press their claims. The defendants have done nothing to prevent their so doing.

It would have been a simple matter for Mr. Bielecki to have commenced London arbitration any time after May 27, 2000, if not before. Arbitration proceedings under the English Arbitration Act of 1996 are commenced when one party serves on the other party or parties notice in writing requiring him or them to appoint an arbitrator or to agree to the appointment of an arbitrator in respect of the matter. See, Reply Declaration of Andrew Taylor dated July 14, 2004, paragraph "3" citing Arbitration Act of 1996 §14(4), (copy attached hereto). If the parties cannot agree on a sole arbitrator, the English Court will appoint one. See Reply Declaration of Andrew Taylor, paragraphs "4" and "5".

11

No prior cooperation or facilitation by the Club was or is necessary to enable Mr. Bielecki to serve his notice commencing arbitration. Plaintiffs and he are and always have been in control of their claims.

Mr. Bielecki has not established that the defendants have done anything that prevented plaintiffs or him from moving forward with the London arbitration. Indeed, Mr. Bielecki's charge that the Club has somehow frustrated his efforts to commence proceedings is unfounded and disingenuous, to say the least. Defendants have not only shown that they have not and will not do anything to hamper the progress of the arbitration, they have, at the Court's suggestion offered a stipulation enhancing the power of an English arbitrator. See Bowles Affidavit Exhibit "7". Accordingly, a stay of this action is warranted.

V

## PLAINTIFFS ARE NOT ENTITLED TO DISCOVERY HERE IN AID OF ARBITRATION IN ENGLAND

While there are certain emergency circumstances which in the past have been held to justify discovery in aid of foreign arbitration, none apply here and plaintiffs have cited to no legal authority in support of their request. There is no basis for discovery here, particularly in view of the stipulation proffered by the Defendants. (Bowles Affidavit Ex. "7") As stated by the Fifth Circuit Court of Appeals in *Republic of Kazakhstan v. Biedermann Int'l*, 168 F.3d 880, 883 (5th Cir.

1999) (footnote omitted), in reversing the decision of the district court granting discovery in aid of a foreign arbitration:

> Empowering arbitrators or, worse, the parties, in private international disputes to seek ancillary discovery through the federal courts does not benefit the arbitration process. Arbitration is intended as a speedy, economical, and effective means of dispute resolution. The course of the litigation before us suggests that arbitration's principal advantages may be destroyed if the parties succumb to fighting over burdensome discovery requests far from the place of arbitration. Moreover, as a creature of contract, both the substance and procedure for arbitration can be agreed upon in advance. The parties may pre-arrange discovery mechanisms directly or by selecting an established forum or body of governing principles in which the conventions of discovery are settled. Resort to § 1782 in the teeth of such agreements suggests a party's attempt to manipulate United States court processes for tactical advantage.

So too here, the Court should reject plaintiffs' attempt to manipulate United States Court processes for tactical advantage, and deny plaintiffs' cross motion for what is in any event very premature discovery on the issue of damages. Plaintiffs have filed lengthy complaints in this court supported by voluminous documents. They can readily state their claims in the arbitration proceeding in London without discovery here and may seek all appropriate discovery in that arbitration. Nothing in the parties' agreement provides or even suggests that an arbitration in England would be in any way subject to supervision of discovery by a U.S. Court. That

13

approach would only further unnecessarily multiply proceedings and increase the parties' costs

## CONCLUSIONS

The Court should grant defendants' renewed motions to stay this action pending arbitration in London and deny plaintiffs' cross-motion for discovery in this court.

The court should also award defendants their costs in dealing with plaintiffs'/Mr. Bielecki's frivolous and vexatious conduct throughout this unnecessary, and improper action commenced by Mr. Bielecki.  That sanction should be addressed to Mr. Bielecki personally because of his repeated intentional actions in disregard of his obligations to this Court and of defendants' rights.

Dated:    New York, New York
          April 4, 2005

                              NOURSE & BOWLES, LLP
                              Attorneys for Defendants

                              By:_____
                                  Lawrence J. Bowles (LB 5950)
                                  One Exchange Plaza
                                  At 55 Broadway
                                  New York, NY  10006-3030
                                  (212) 952-6200

Shaun F. Carroll, Esq.
    Of Counsel

14

Attachment –      Reply Declaration of Andrew Taylor
                             dated July 14, 2004