James M. Maloney
Attorney for Plaintiffs
33 Bayview Avenue
Port Washington, NY 11050
(516) 767-1395

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

HUGHES, HOOKER & CO. AND
HUGHES, HOOKER (CORRESPONDENTS) S.A.,

      Plaintiffs,

       -against-

AMERICAN STEAMSHIP OWNERS MUTUAL
PROTECTION AND INDEMNITY ASSOCIATION,
INC.,  SHIPOWNERS CLAIMS BUREAU,
JOSEPH E. M. HUGHES, THOMAS J. MCGOWAN,
AND VINCENT J. SOLARINO,

      Defendants.

04 CV 1859 (SHS)

---

# MEMORANDUM OF LAW

### IN OPPOSITION TO DEFENDANTS' RENEWED MOTIONS FOR ORDERS STAYING THIS ACTION PENDING ARBITRATION IN LONDON

### and

### IN SUPPORT OF PLAINTIFFS' CONDITIONAL CROSS-MOTION

TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

COUNTER-STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

SUMMARY OF THE ARGUMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

POINT I

      THE *NEDERLANDSE* PRINCIPLES FAVOR NOT GRANTING
      THE STAY UNDER THE CIRCUMSTANCES PRESENT HERE . . . . . . 7

POINT II

      THE ARBITRATION AGREEMENT DOES NOT SPECIFY
      "LONDON" ARBITRATION, AND ITS INTENT AND EFFECT IS
      TO LEAVE ONLY THE CHOICE BETWEEN ARBITRATION
      AND LITIGATION TO THE DEFENDING PARTY . . . . . . . . . . . . . . . . 11

POINT II

      SHOULD THIS COURT DETERMINE THAT "LONDON"
      ARBITRATION IS CALLED FOR AND STAY THE
      PROCEEDINGS PENDING SAME, IT SHOULD ORDER LIMITED
      DISCOVERY BEFORE IMPLEMENTING THE STAY . . . . . . . . . . . . . 16

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

## TABLE OF AUTHORITIES

*IDS Life Ins. Co. v. Sunamerica, Inc.*
103 F.3d 524 (7th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Landis v. North America Co.*
299 U.S. 248 (1936) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*McCowan v. Sears, Roebuck & Co.*
908 F.2d 1099 (2d Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10 n.2

*Nederlandse Erts-Tankersmaatschappij v. Isbrandtsen Company, Inc.*
339 F.2d 440 (2d Cir. 1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States Fire Insurance Company v. General Reinsurance Corporation*
949 F.2d 569 (2d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

PRELIMINARY STATEMENT

This motion by the defendants to stay the proceedings pending "London" arbitration arises out of a contractual provision from a contract that binds some, but not all, of the defendants.  The provision reads:

> This agreement is subject to American or English law and jurisdiction either in arbitration, before a single arbitrator, or before the regular courts, at the option of the defending party.

Notably, the above-quoted arbitration clause nowhere specifies "London" arbitration, nor, as will be shown herein, does a plain reading of its language grant the choice of *geographical* forum to the "defending party" (although it undeniably grants the choice between arbitration and litigation to that party).

It is submitted that before staying this action specifically in favor "London" arbitration (as defendants have moved this Court to do), this Court logically must first determine whether "London" arbitration at the option of the "defending party" is indeed required under the provision, as defendants assert.  Plaintiffs do not dispute that the "defending party" has the right to demand the forum of arbitration as over against "the regular courts," and accordingly would not oppose staying the proceedings pending U.S. arbitration, but, for the reasons that follow, plaintiffs strenuously oppose staying the proceedings now before this Court to allow London arbitration under English law to proceed against some of the defendants while holding in abeyance the proceedings against those defendants not bound by the arbitration clause.

-1-

As discussed at the last conference, in conjunction with opposing the defendants' motion, the plaintiffs cross-move for the following contingent relief: should this Court determine that "London" arbitration called for, and should it stay the proceedings pending same, it is urged that this Court first order limited discovery sufficient to enable the plaintiffs to evaluate the monetary value of their claim with greater precision than has heretofore been possible. *Cf.* Declaration of Jacek Bielecki submitted herewith at ¶¶ 24-30, 61.

<u>COUNTER-STATEMENT OF FACTS</u>

A detailed statement of facts that are relevant to the opposition of the defendants' motion is contained in the Declaration of Jacek Bielecki submitted herewith ("Bielecki Dec."). A brief, non-exhaustive summary of the major points of divergence between the Statement of Facts proffered by the defendants in their Brief (supported only by the affidavit of attorney Lawrence Bowles) follows.

At page 5 of Defendants' Brief it is asserted as fact that "[n]either Bielecki nor SCB . . ." are parties to the Agreement. As this Court may recall, the question of whether SCB (Shipowners Claims Bureau) is or is not a party to the Agreement is a question that has been hotly debated by the parties and is very much in dispute. Indeed, Exhibit 7 to Mr. Bowles's Affidavit consists of a Stipulation and Order to which he would have agreed on behalf of all defendants, allowing a London arbitrator to have made the determination of whether or not SCB is a party

-2-

to the Agreement. *Id.* at ¶ 1(c). Since it would appear that this Court will not need to decide whether SCB is a party to the Agreement in order to decide the pending motion and cross-motion, the factual misstatement in Defendants' Brief may be of no immediate consequence, but this Court is respectfully referred to the Agreement itself, which (in all versions) defines both American Steamship Owners Mutual Protection and Indemnity Association, Inc. *and* SCB as "the AMERICAN CLUB" and the party "of the first part," just as it defines both of the Hughes Hooker entities as "HUGHES HOOKER" and the party "of the second part."

Defendants' Brief goes on to state at page 6 (again relying on no support other than the affirmation of Mr. Bowles, who had no personal knowledge of the fact asserted) that "Clause 5 of the Agreement [the arbitration clause] was personally drafted by Mr. Bielecki . . ." Mr. Bielecki's own firsthand account tells quite a different story, and the Court is respectfully referred to the Bielecki Dec. at ¶¶ 5-13.

Next, also beginning on page 6 and also with no factual support beyond Mr. Bowles's affidavit, Defendants' Brief discusses the AMERICAN CLUB's termination of the Agreement and the question of HUGHES HOOKER's exclusivity. Suffice it to say that, again, the defendants' portrayal of facts that are very much in dispute is self-serving, unsupported, and inaccurate, and on the points of termination and exclusivity, the Court is respectfully referred to the

Bielecki Dec. at ¶¶ 53-54 and 31-43, respectively.

The Statement of Facts in Defendants' Brief goes on at page 7 to opine without substantive comparison that the initial and amended complaints are substantially identical (a point not worthy of rebuttal since the documents speak for themselves) and to summarize the conduct of the defendants who were not parties to the Agreement (hereinafter, the "Non-Party Defendants") as "proper[ly] reject[ing] Mr. Bielecki's improper demands for commissions he had not earned." On this last point, the Court is respectfully referred to the Bielecki Dec. at ¶¶ 44-47, and particularly to its Exhibit 10, which was also page 67-68 of the Complaint and Amended Complaint's Exhibit A.   That document is a fax dated March 23, 2000, from Defendant HUGHES to Mr. Bielecki, in which the former wrote: "You were entitled (which we have never denied) to receive commission on entries 'based or domiciled in Greece' (Clause 3b) *whether or not they entered the Club as a result of your efforts . . . the agreement very clearly contemplated efforts by others to seek Greek business for the Club from which you yourself would derive benefit without direct contact with that business . . . .*" (emphasis added).  The unsupported assertion in the Defendants' Brief that rejection by the Non-Party Defendants of the plaintiffs' claims because the commissions were "unearned" not only is flatly contradicted by the documents in the record, but it also illustrates the absurdity of the defendants' position that the claims against the Non-Party Defendants are of no substance and are merely a "device" to prevent arbitration.

Indeed, it appears that Hughes, an employee of SCB, personally believed that the

plaintiffs were entitled to commissions on new entries of Greek-domiciled vessels

whatever the source of those new entries, but the American Club[1] has thus far not

only denied payment of a substantial part of those commissions but also has

refused to provide the information necessary to make a reasonable estimate of the

amount of commissions due (see Bielecki Dec. at ¶¶ 24-30, 61).  Given the manner

in which facts would be adduced at trial in the judicial forum, where all the

defendants would be "in it" together (including Mr. Hughes, who works for SCB,

which may or may not be a party to the Agreement, and which in turn manages the

affairs of the American Club, which in turn has denied the claims for commission

and the information necessary to evaluate them) as over against factfinding in an

arbitration setting, where none of the witnesses (and perhaps not even SCB itself)

would be a party, justice and judicial economy would arguably require that the

matter be kept before this Court and arbitration denied entirely, which indeed is

consistent with the case law.  That having been said, the plaintiffs would consent

to U.S. arbitration (with the arbitrator to decide whether SCB is a party) and a stay

of these proceedings during its pendency.  Plaintiffs would so consent not because

it favors them (resolution before this Honorable Court would be preferable by far),

---

[1] Except for those parts of this brief that discuss the Agreement's use of the term
"AMERICAN CLUB" to encompass both that entity and SCB, and the conequences thereof
(i.e., the references at page 3, *supra*), the use of the term "American Club" or "Club" should
be taken to refer to Defendant AMERICAN STEAMSHIP OWNERS MUTUAL
PROTECTION AND INDEMNITY ASSOCIATION, INC. to the exclusion of SCB.

but simply because an honest reading of the arbitration clause permits the

defending party to choose between arbitration and the court once the geographical

location and corresponding choice of law has been determined by the complaining

party, and plaintiffs would be content with such arbitration proceeding in the U.S..

## SUMMARY OF THE ARGUMENTS

The action should not be stayed in favor of arbitration because at least three

and possibly four of the five defendants are not parties to the Agreement.

Moreover, the American Club has hampered the progress of any attempt at

arbitration to date and will likely continue to do so by withholding critical

information.  In any event, the action should not be stayed in favor of "London"

arbitration because  there is nothing in the arbitration clause that specifies

"London" arbitration.  This is in sharp contrast to standard commercial arbitration

clauses that clearly specify a city.  The clause at issue here does *not* specify a city

simply because its intent and effect is to leave only the choice between arbitration

and litigation to the defending party, whereas the *complaining* party is to make the

initial decision as to the country (U.S. or U.K.) in which the proceeding will be

conducted and the corresponding choice of law.  This interpretation is borne out

not only by an analysis of the sentence structure but also by a commercially

reasonable interpretation of the arbitration clause.  To the extent that this Court

finds ambiguity as to the meaning of the arbitration clause on these points, the

parol evidence rule does not apply, and Mr. Bielecki's sworn statement (see

especially Bielecki Aff. at ¶¶ 8-19) is both admissible and instructive.  Finally, the

principle of *contra proferentem* is inapplicable to resolving the ambiguity, both

because Mr. Bielecki was not the exclusive drafter and because the principle

would in any event be inapplicable under these circumstances.

The plaintiffs reiterate that they would consent to a stay pending U.S.

arbitration.  If the Court finds that "London" arbitration is required, the plaintiffs

would request sufficient discovery before the implementation of the stay to allow

for a meaningful evaluation of the claim for commissions, which requires

knowledge of the Club's registry,  premiums, etc. that defendants have thus far

refused to provide and would certainly resist providing in an arbitration.

<u>ARGUMENT</u>

POINT I

THE *NEDERLANDSE* PRINCIPLES FAVOR NOT GRANTING
THE STAY UNDER THE CIRCUMSTANCES PRESENT HERE

As Defendants' Brief correctly points out at page 15, the case of

*Nederlandse Erts-Tankersmaatschappij v. Isbrandtsen Company, Inc.*, 339 F.2d

440 (2d Cir. 1964) (which defendants refer to as *Isbrandtsen*, but which will be

referred to herein as *Nederlandse*), appears to be the earliest case granting a stay

of litigation pending completion of arbitration proceedings on related issues.

There, the Second Circuit wrote:

> The defendants have the burden of establishing that a stay is
> warranted.  Without attempting to list all relevant factors, we point

-7-

out that the defendants should demonstrate to the satisfaction of the court that they have not taken nor will take any steps to hamper the progress of the arbitration proceeding, that the arbitration may be expected to conclude within a reasonable time, and that such delay as may occur will not work undue hardship.

*Id*. at 442 (footnote omitted).

It is respectfully submitted that the defendants here have not satisfied their burden of showing that a stay is warranted.  Mr. Bowles's affidavit does not negate the facts that, as detailed in Mr. Bielecki's Declaration at ¶¶ 20-30 and supported by the exhibits thereto, the defendants have already delayed arbitration considerably and have refused to provide information that is absolutely necessary to Mr. Bielecki's quantification of his claim for commissions to which he is entitled under the Agreement.  See discussion, *supra*.  It can only be expected that the American Club will continue to resist providing the data about its Greek registry and premiums even if arbitration were actually commenced.

Defendants' Brief also quotes briefly from the seminal case of *Landis v. North America Co.*, 299 U.S. 248 (1936), but the quoted passage is truncated before reaching the following:

[T]he suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward [in court], if there is even a fair possibility that the stay for which he prays will work damage to some one else.  Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both.

*Id.* at 255.

-8-

As detailed above, it appears from his fax of March 23, 2000 (Exhibit 10 to Bielecki Dec., referenced at ¶¶ 44-47 thereof, and page 67-68 of the Complaint and Amended Complaint's Exhibit A), that Mr. Hughes, an employee of SCB, personally believed that the plaintiffs were entitled to commissions on new entries of Greek-domiciled vessels whatever the source of those new entries, but the American Club has both denied payment of a substantial part of those commissions and refused to provide the information necessary to make a reasonable estimate of the commissions due. In deciding the question of whether a stay would " work damage to some one else," *Landis, supra*, or "work undue hardship," *Nederlandse*, this Court should consider not only whether the claims as against the Non-Party Defendants (hereinbefore defined) will be unduly delayed by piecemeal arbitration in which the sole party ( i.e., the Club, at least according to the defendants) has withheld and will likely continue to withhold critical information, but also whether those claims can adequately be *presented* in a forum in which the Non-Party Defendants (which, according to the defendants, include SCB, the employer of the three individual defendants) are shielded by virtue of not being parties to the proceeding. As noted, given the manner in which facts would be adduced before this Court, where all the defendants are parties, as over against the situation in which evidence were to be taken before an arbitrator where many of the witnesses (and perhaps one of the entities) are not parties, justice requires that the matter be kept before this Court and the stay denied.

-9-

Defendant's Brief goes on to posit that the principle of "parallel-proceeding abstention," derived from a Seventh Circuit case, *IDS Life Ins. Co. v. Sunamerica, Inc.*, 103 F.3d 524 (7th Cir. 1996), requires that this Court grant the stay on the putative basis that the claims against the Non-Party Defendants are "sham" pleadings designed to prevent arbitration. That argument, even if it were to be applicable in this Circuit,[2] is negated in the first instance by the copious evidence in the record, including the aforementioned fax from Mr. Hughes, that indicates tortious behavior. Mr. Hughes wrote to Mr. Bielecki, "You were entitled . . . to receive commission on entries 'based or domiciled in Greece' (Clause 3b) whether or not they entered the Club as a result of your efforts . . . the agreement very clearly contemplated efforts by others to seek Greek business for the Club from which you yourself would derive benefit without direct contact with that business . . . ." but the Club steadfastly refused even to provide the information necessary to evaluate those claims for commission. Since it is defendants' position that neither SCB nor its employee, Mr. Hughes, are parties to the Agreement, but the Club (undeniably a party) has obstructed plaintiff's efforts to ascertain the correct figures, it follows that, since Hughes was aware of the validity of the claim for "unearned" commissions and exercises control over the decisionmaking of SCB,

---

[2] Judge Posner's opinion in *IDS* discusses the Second Circuit's repudiation of its own case, *McCowan v. Sears, Roebuck & Co.*, 908 F.2d 1099 (2d Cir. 1990), that stood for the proposition that "a party to litigation involving issues subject to an arbitration agreement . . . is entitled to a stay under section 3 of the FAA regardless of its status as a party to the arbitration agreement" by returning to the principles of *Nederlandse*. 103 F.3d at 530.

which in turn manages the Club, at the very least a claim of tortious interference

with contract is already well substantiated.  In any event, the pleadings should be

construed in the light most favorable to the non-moving party, and it is submitted

that the defendants' arguments that the Non-Party Defendants have been included

merely to avoid arbitration is meritless.


POINT II

THE ARBITRATION AGREEMENT DOES NOT SPECIFY
"LONDON" ARBITRATION, AND ITS INTENT AND EFFECT
IS TO LEAVE ONLY THE CHOICE BETWEEN
ARBITRATION AND LITIGATION TO THE DEFENDING PARTY


The arbitration provision at issue reads:

> This agreement is subject to American or English law and
> jurisdiction either in arbitration, before a single arbitrator, or
> before the regular courts, at the option of the defending party.

As developed in the Bielecki Aff. at ¶¶ 14-19, there is no reference

anywhere to "London" arbitration, and that is quite simply because the geographic

choice of forum for dispute resolution was to be left to the complaining party, not

to the defending party.

From a commercial reasonableness perspective, this makes sense.  If, on the

one hand, a specified geographic location for arbitration is agreed upon, a typical

clause specifying a city would be inserted.  That is the case in the standard clauses

shown in Exhibit 4 to the Bielecki Aff., but it is not the case here.  Instead, two

-11-

parties on opposite sides of the Atlantic were agreeing to a forum selection with some built-in variability. But to have that variability determined by the defending party with regard to the location of the forum would make no sense, for in each case it would give the defending party the opportunity to choose to have the dispute resolved on the side of the Atlantic opposite the location of the witnesses, etc. For example, if the Club were to have a claim against Mr. Bielecki based on facts that arose in Europe, it could demand arbitration in England, but Mr. Bielecki could remove it to the United States to make it more costly to pursue (being farther from the facts and witnesses). If, on the other hand, the Club began by demanding arbitration in the United States, Mr. Bielecki could allow it to proceed there with the same effect. If the clause means that the defending party may choose the geographic location of the dispute resolution, it means that the defending party will be able to make the claim more costly and difficult to pursue in every case by keeping it on the "wrong" side of the Atlantic. Thus, such an interpretation would be commercially unreasonable.

Perhaps more importantly, such an interpretation is NOT supported by the structure of the sentence itself, which, for the sake of ready reference, will be repeated again:

> This agreement is subject to American or English law and jurisdiction either in arbitration, before a single arbitrator, or before the regular courts, at the option of the defending party.

The sentence begins by stating that the Agreement "is subject to American

or English law and jurisdiction," which obviously implies that the law and "jurisdiction" go hand in hand, but it is silent as to which party chooses that "law and jurisdiction." Only after introducing that first variable does the "either . . . or" clause appear: "either in arbitration . . . or before the regular courts . . ." Following that "either . . . or" clause is the phrase, "at the option of the defending party."

This begs the question: how much of the preceding language is "at the option of the defending party"? A brief inspection, coupled with a moment's reflection, reveals that not all of the preceding language could possibly be contemplated. The defending party could not, for example, choose the identity of the sole arbitrator as part of its "option." Yet if all that goes before "at the option of the defending party" is at that party's option, that would be the case.

Accordingly, it is clear that what is "at the option of the defending party" is circumscribed, and it is submitted that the limits are logically defined by the preceding "either . . . or" clause: "either in arbitration . . . or before the regular courts . . ." Only the objects of "either" and "or" (those objects being "in arbitration" and "before the regular courts") are modified by the closing phrase, "at the option of the defending party," which, as noted, cannot modify "before a single arbitrator" to the extent of giving the defending party the sole power to appoint that arbitrator, and likewise does not modify the relatively distant introductory phrasing relating to "law and jurisdiction."

-13-

Arguably, the "law and jurisdiction" variable is a point of some ambiguity. It is certainly conceded that the provision would have been clearer had the phrase "at the option of the complaining party" been inserted to modify that earlier part of the arbitration provision.

To the extent that there is ambiguity in a contractual provision, extrinsic evidence about the intent of the parties may be admitted; the parol evidence rule is not applicable. *United States Fire Insurance Company v. General Reinsurance Corporation*, 949 F.2d 569 (2d Cir. 1991). Accordingly, if this Court, notwithstanding the foregoing arguments based on commercial reasonableness, logic, and grammar, still finds such ambiguity with regard to the question of whether "law and jurisdiction" is modified by the phrase is "at the option of the defending party," it may look to the Bielecki Aff. at ¶¶ 8-19 for guidance.

Finally, the Bielecki Aff. at ¶¶ 5-13 casts serious doubts on the assertion made in Defendants' Brief at page 6 (relying on no support other than the affirmation of Mr. Bowles, who had no personal knowledge of the fact asserted) to the effect that "Clause 5 of the Agreement [the arbitration clause] was personally drafted by Mr. Bielecki . . ." Accordingly, even if the argument were made and supported in law that the doctrine of *contra proferentem* requires any ambiguity to be construed against the drafter, it is by no means clear that Mr. Bielecki was the sole and independent drafter. But the law would not require such a result even if Mr. Bielecki *were* the drafter: the doctrine is applied only in situations where the

-14-

parties are not in relative parity in terms of their bargaining ability, being typically applied to resolve ambiguous clauses in insurance policies in favor of the insured. Where, however, the two parties are on relatively equal footing (as with two insurance companies), the doctrine has no application. *See, e.g., In re Prudential Lines*, 158 F.3d 65 (2d Cir. 1998); *United States Fire Insurance Company, supra*, 949 F.2d at 573-74. In the latter case, the Second Circuit explained that the rule was promulgated and is applied to favor the lesser experienced party to contract negotiations. *See id.* Here, two experienced parties were bargaining at arms' length, and even if this Court were to find that Mr. Bielecki had been the sole drafter (which is not supported by the evidence), the Club was by no means "taken advantage of" in accepting the language , and the doctrine of *contra proferentem* should not be applied to favor the defendants here.

It is respectfully submitted that the arbitration provision does not contemplate "London" arbitration, and that its forum-selection language, for all the reasons stated above, should be construed to leave the initial geographic choice of forum selection to the complaining party, with the defending party to choose between arbitration and litigation.

POINT III

SHOULD THIS COURT DETERMINE THAT "LONDON"
ARBITRATION IS CALLED FOR AND STAY THE
PROCEEDINGS PENDING SAME, IT SHOULD ORDER
LIMITED DISCOVERY BEFORE IMPLEMENTING THE STAY

In the plaintiffs' conditional cross-motion, it is respectfully urged that,
should this Court decide to stay these proceedings in favor of "London"
arbitration, that it first order limited discovery sufficient to enable the plaintiffs to
evaluate the monetary value of their claim with greater precision than has
heretofore been possible.  *Cf.*  Declaration of Jacek Bielecki submitted herewith at
¶¶ 24-30, 61.

The question of whether such discovery should be ordered is inextricably
intertwined with the question of whether the stay should be granted at all: as
discussed in Point I, *supra*, the Club's continued refusal to provide information
about registry and premiums that would enable plaintiffs to determine the value of
their commissions is a good reason to deny the stay in the first place, given the
existence of other parties to the litigation who have not only recognized that
commissions are due the plaintiffs on all new Greek tonnage and premiums (see
discussion related to fax from Mr. Hughes, *supra*), but who have also played a role
in withholding the information that would enable the commission to be
determined.  It is respectfully suggested that if this court stretches the limits of the
*Nederlandse* factors to allow the stay, it should do so upon condition that limited

-16-

discovery is completed before implementation.  This is particularly important in "London" arbitration, where "pre-points-of-claim discovery" is not allowed.  In that this is conditional relief, a draft Order setting forth the precise relief requested will not be included herewith, but it is requested that if the Court grants the stay in favor of "London" arbitration, plaintiffs be permitted to submit such a draft Order pertaining to the specifics of the requested discovery.


## CONCLUSION

For all of the foregoing reasons, the defendants' motion should be DENIED, but if it is granted, limited discovery should be ordered before the stay is implemented.


Dated:       March 28, 2005
             Port Washington, New York


                              Respectfully submitted,

                              James M. Maloney
                              33 Bayview Avenue
                              Port Washington, NY 11050

                              (516) 767-1395


-17-