UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
HUGHES, HOOKER & CO. AND                                          :
HUGHES, HOOKER (CORRESPONDENTS) S.A.,:
                                                                  :
            Plaintiffs,                                           :
                                                                  :       04 Civ. 1859 (SHS)
    -against-                                                     :
                                                                  :       OPINION & ORDER
AMERICAN STEAMSHIP OWNERS                                         :
MUTUAL PROTECTION AND INDEMNITY                                   :
ASSOCIATION, INC., SHIPOWNERS CLAIMS                              :
BUREAU, JOSEPH E. M. HUGHES, THOMAS J.                            :
McGOWAN, AND VINCENT J. SOLARINO,                                 :
                                                                  :
            Defendants.                                           :
------------------------------------------------------------------x

SIDNEY H. STEIN, U.S. District Judge.

      Hughes, Hooker & Co. and Hughes, Hooker (Correspondents) S.A. (collectively, "Hughes Hooker") bring this action against the American Steamship Owners Mutual Protection and Indemnity Association (the "American Club"); its managing company, the Shipowners Claims Bureau (the "Claims Bureau"); and its current and former corporate officers, Joseph E. M. Hughes, Thomas J. McGowan and Vincent J. Solarino, for damages for breach of contract, fraud, tortious interference with contractual relationship, and for an accounting. The gravamen of Hughes Hooker's complaint is that the American Club failed to compensate Hughes Hooker pursuant to a contract entered into in 1996 between Hughes Hooker and the American Club, (the "Agreement"), and that the American Club wrongfully terminated the Agreement in September 1999.

      The American Club moves for a stay of this action pending arbitration in London, claiming a right to arbitration pursuant to the arbitration clause in the Agreement. The remaining defendants claim not to be parties to the Agreement, and also move for a stay of the action pending arbitration. While Hughes Hooker concedes the validity of the arbitration

1

clause and the arbitrability of its claims against the American Club, it nonetheless opposes the entry of a stay, arguing that interests of justice and judicial economy require that this litigation not be stayed.  Hughes Hooker's primary objections are to the American Club's choice of England as the forum for arbitration, and to the stay of the action against the remaining defendants.  Hughes Hooker cross moves for limited pre-arbitration discovery in the event that a stay is granted.

Because this Court finds that the arbitration clause is valid and the claims asserted against the American Club are within the scope of the arbitration clause, this proceeding must be stayed as against the American Club.  Also, because the arbitration clause at issue unambiguously gives the American Club the right to select the forum for the arbitration, the Court will enforce the American Club's choice of forum.  Moreover, the stay will extend to the remaining defendants in the interests of fairness and judicial economy.  Finally, because Hughes Hooker has not demonstrated that the requested pre-arbitration discovery is necessary, Hughes Hooker's cross motion is denied.

**I.    BACKGROUND**

Hughes, Hooker & Co was a specialist marine law and claims handling firm based in London and in Piraeus, Greece; in Greece it was known as Hughes, Hooker (Correspondents) S.A. (Am. Compl. ¶ 3).  The American Club is a non-profit mutual insurance association, which provides marine indemnity insurance to owners and operators of merchant vessels.[1]  (Affidavit of Lawrence J. Bowles in Support of Defs.' Renewed Mots. for Orders Staying this Action Pending Arb. in London, at ¶ 5).  The American Club is managed by the Shipowners Claims Bureau. (Id. ¶ 5).  Joseph Hughes is the Secretary of the American Club, and the

---

[1] By way of background, marine indemnity insurance is, according to Hughes Hooker, typically purchased by shipowners and charterers of ships to protect against a range of risks, including damage to cargo, wreck removal, and crew injury and death.  (Am. Compl. at ¶ 7).  The marine indemnity insurance is underwritten on a mutual basis; *i.e.*, purchasers become members of an association, such as the American Club, and pool their premiums to cover any losses incurred by individual members.  (Id.)

2

Chairman and Chief Executive Officer of the Claims Bureau. (Id.). Vincent Solarino serves as the President and Chief Operating Officer of the Claims Bureau. (Id.). Thomas McGowan was formerly the Chief Executive of the Claims Bureau and Secretary of the American Club. (Id.).

According to Hughes Hooker, in 1995, the American Club sought to expand internationally by enrolling new members among shipowners in Greece. (Am. Compl. ¶ 9). To further that goal, the American Club retained Jacek Bielecki, the original plaintiff in this action, and his firm, Hughes Hooker, as its exclusive representative in Greece. (Id. ¶¶ 3,9). In March 1996, Hughes Hooker and the American Club entered a written agreement pursuant to which Hughes Hooker would provide marketing services and act as the American Club's general correspondent in Greece. (Id. ¶ 11). The written agreement, dated March 25, 1996, is entitled an "Agreement" between the Claims Bureau and the American Club on one side and Hughes, Hooker & Co. and Hughes, Hooker (Correspondents) S.A. on the other. (Agreement, at 2, attached at pp.1-3 of Ex. A to Original Compl., incorporated into Am. Compl. at ¶ 11). The Agreement is signed only on behalf of the American Club, Hughes, Hooker & Co., and Hughes, Hooker (Correspondents) S.A. (Id.). The Agreement also sets forth a formula for calculating Hughes Hooker's compensation, the duration of the Agreement, and the procedure for its termination. (Id. ¶¶ 1, 3-4). Finally, the clause at issue here – Clause 5 – sets forth the parties' agreement regarding dispute resolution as follows:

> This Agreement is subject to American or English law and jurisdiction either in arbitration, before a single arbitrator, or before the regular courts, at the option of the defending party.

(Id. ¶ 5). Pursuant to the Agreement, Hughes Hooker represented the American Club in Greece from 1996 until late 1999. A number of disputes arose during that period over the adequacy of the American Club's disclosures on the premiums paid by new members enrolled through Hughes Hooker's efforts and its commission payments. The disputes

3

culminated in the American Club's giving notice in September 1999 of its intention to terminate the Agreement as of December 1999. That termination notice did not put an end to the parties' disagreements. Instead, it triggered several rounds of disputes over how to settle disputes relating to the parties' obligations under the Agreement, as well as disputes over the American Club's outstanding obligations to Hughes Hooker. After several unsuccessful endeavors to settle their disputes, Bielecki commenced an action against the American Club and the remaining defendants on March 8, 2004 in this district. Approximately six weeks thereafter, the American Club made its arbitration demand. Hughes Hooker subsequently filed an amended complaint, substituting Hughes, Hooker & Co. and Hughes, Hooker (Correspondents) S.A. as plaintiffs, and the American Club again moved for a stay of the action pending arbitration.

The pending cross motions present this Court with four questions: first, whether the American Club is entitled to a stay of this action; second, whether the Court should enforce the American Club's selection of the forum for arbitration; third, whether such a stay should extend to the other defendants; and finally, whether this Court should grant Hughes Hooker's request for pre-arbitration discovery. The Court addresses each in turn.

**II.    DISCUSSION**

   **A.    Staying an Action Pending Arbitration Pursuant to the Federal Arbitration Act**

In reviewing defendants' motion for a stay pending arbitration, the Court is guided by a "federal policy [that] strongly favors arbitration as an alternative dispute resolution process." David L. Threlkeld & Co. v. Metallgesellschaft, Ltd., 923 F.2d 245, 248 (2d Cir. 1991) (citing Rodriguez de Quijas v. Shearson/American Express, Inc., 490 U.S. 477, 109 S. Ct. 1917, 104 L. Ed. 2d 526 (1989) and Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840, 844 (2d Cir. 1987)). Where there is a question as to whether claims are arbitrable, federal

arbitration policy requires that "any doubts . . . be resolved in favor of arbitration." Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 24-25, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983); see also Louis Dreyfus Negoce, S.A. v. Blystad Shipping & Trading Inc., 252 F.3d 218, 223 (2d Cir. 2001). This policy favoring arbitration "is even stronger in the context of international business transactions." Threlkeld & Co., 923 F.2d at 248 (citing Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 629-31, 105 S. Ct. 3346, 87 L. Ed. 2d 444 (1985)).

The American Club contends that a stay should be imposed pursuant to section 3 of the Federal Arbitration Act, (the "FAA"), 9 U.S.C. § 3, and alternatively that a stay is warranted and its choice of arbitration forum should be enforced pursuant to section 206 of the FAA, which implements the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. §§ 201 et seq. (the "Convention").

### 1.     The Agreement Is Subject to the Convention

An agreement is subject to enforcement pursuant to the Convention and the implementing provisions of the FAA if it meets the following four requirements: "(1) there must be a written agreement; (2) it must provide for arbitration in the territory of a signatory of the convention; (3) the subject matter must be commercial; and (4) it cannot be entirely domestic in scope." Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l, Inc., 198 F.3d 88, 92 (2d Cir. 1999); Credit Suisse First Boston, LLC. v. Padilla, 326 F.Supp.2d 508, 511 (S.D.N.Y. 2004); see also 9 U.S.C. § 202. The Agreement at issue here meets each of these four requirements: it is in writing, it provides for arbitration in the territory of England or the United States, both of which are signatories to the Convention, and it involves an international commercial relationship. Where an agreement meets each of these requirements, "a federal court must compel arbitration of any dispute falling within the scope

5

of the agreement pursuant to the terms of the agreement." U. S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., Ltd., 241 F.3d 135, 146 (2d Cir. 2001).

### 2. A Stay of Hughes Hooker's Claims Against the American Club Is Warranted

As noted, the American Club first contends that a stay pending arbitration must be granted pursuant to Section 3 of the FAA.[2] Section 3 of the Federal Arbitration Act provides that where a court is satisfied that "any issue referable to arbitration under an agreement in writing for such arbitration" is before the court, the court:

> shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9. U.S.C. § 3. Thus, pursuant to section 3 of the FAA, where a party has not waived its right to arbitration, a district court has no discretion to deny a stay if a valid agreement to arbitrate exists and the claims at issue come within the scope of that agreement. See ACE Capital Re. Overseas, Ltd. v. Central United Life Ins' Co., 307 F.3d 24, 28-29 (2d Cir. 2002); see also Milgrim v. Backroads, Inc., 142 F. Supp. 2d 471, 476 (S.D.N.Y. 2001) (holding that a court "must stay proceedings and order parties to proceed to an arbitration" if a dispute is arbitrable).

Hughes Hooker does not dispute that it has agreed to arbitrate upon demand by the "defending party,"[3] and Hughes Hooker also does not argue – nor could it - that its claims

---

[2] Chapter 2 of the FAA implements the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, and Chapter 1 of the FAA is incorporated into Chapter 2 "to the extent that [Chapter 1] is not in conflict with [Chapter 2] or the Convention." 9 U.S.C. § 208. Thus, Chapter 1, section 3, which expressly grants a district court the authority to stay the underlying litigation may be invoked here. See DaPuzzo v. Globalvest Mgmt. Co., L.P., 263 F. Supp. 2d 714, 725 (S.D.N.Y. 2003) ("Although the Convention contains no express provision concerning a stay of the underlying litigation, such authority exists both implicitly, as well as by incorporation of Chapter 1 into Chapter 2 and the Convention through 9 U.S.C. § 208.")

[3] See (Pls.' Mem. of Law in Opp. To Defs.' Renewed Mots. for Orders Staying this Action Pending Arbitration in London and in Supp. of Pls.' Conditional Cross Mot., at 1) ("Plaintiffs do not dispute that the 'defending party' has the right to demand the forum of arbitration . . .").

6

against the American Club fall outside the scope of that agreement.[4] Although Hughes Hooker suggests that the American Club has delayed the commencement of arbitration in this matter, the evidence does not support that contention, and regardless, delay does not result in waiver, unless there is resulting prejudice. See Leadertex v. Morganton Dyeing & Finishing Corp., 67 F.3d 20, 25 (2d Cir. 1995).

Clause 5 of the Agreement is plainly a "broad" arbitration provision, expressing the parties' "intent to have arbitration serve as the primary recourse for disputes connected to the agreement," Louis DreyfusNegoce, S.A. v. Blystad Shipping & Trading Inc., 252 F.3d 218, 225 (2d Cir. 2001), and it is broad enough to encompass all claims asserted against the American Club. See ACE Capital Re Overseas Ltd., 307 F.3d at 34. Clause 5 states simply that the Agreement "is subject to American or English law … either in arbitration, before a single arbitrator, or before the regular courts." It contains no words of limitation; nor does its text evince any intent by Hughes Hooker or the American Club to limit its application.

Because each of Hughes Hooker's claims rests on Hughes Hooker's interpretation of the Agreement and its allegation that pursuant to the Agreement it was an exclusive representative for the American Club, those claims clearly "touch matters" covered by that Agreement, and are therefore subject to arbitration. Genesco, 815 F.2d at 846 (internal citations omitted). Id. ("[W]hether a particular claim falls within the scope of the parties' arbitration agreement," depends upon "the factual allegations in the complaint rather than the legal causes of action asserted.") (citing Mitsubishi, 473 U.S. at 625, n.13). Moreover, the American Club correctly contends that Hughes Hooker's fraud claim does not preclude the Court from enforcing the arbitration clause because Hughes Hooker has not claimed that Clause 5 – the agreement to arbitrate – was induced by fraud. See Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 402, 87 S. Ct. 1801, 18 L. Ed. 2d 1270 (1967).

---

[4] In fact, in a declaration submitted in support of Hughes Hooker's opposition to defendants' renewed motion to stay, Bielecki asserts that Hughes Hooker has stated only a contractual claim against the American Club. (Declaration of Jacek Bielecki, at ¶ 55).

7

Because there is a valid agreement to arbitrate, and because it is broad enough to encompass the claims asserted against the American Club, a stay of this action as against the American Club is warranted.

### B. The American Club's Choice of Forum Is Enforceable

The American Club contends that this action should be stayed pending arbitration in London pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. §§ 201 et seq. Unlike Chapter 1 of the FAA, which grants a district court the authority only to compel arbitration in a location within its jurisdiction, see 9 U.S.C. § 4, Chapter 2 of the FAA, which implements the Convention and governs international arbitration agreements like the one at issue here, grants a district court the authority to direct that arbitration be held in accordance with the parties' agreement at a location "within or without the United States." See 9 U.S.C. § 206; see also Oil Basins, Ltd. v. Broken Hill Proprietary Co., 613 F. Supp. 483, 486 (S.D.N.Y. 1985) (citing cases). This provision does not, however, give a district court the authority to direct arbitration in a particular location outside its jurisdiction where no location is provided by the parties' agreement. See 9 U.S.C. § 206;[5] see also Oil Basins, Ltd., 613 F. Supp. at 486. Thus, the Court must determine whether Clause 5 evinces an agreement by the parties as to the location for arbitration of this dispute.

In construing this provision, this Court must first look to the plain language of Clause 5. Where the "'language admits of only one reasonable interpretation, the court need not look to extrinsic evidence of the parties' intent or to rules of construction to ascertain the

---

[5] Section 206 provides in relevant part:

A court having jurisdiction under this chapter [9 USCS §§ 201 et seq.] may direct that arbitration be held in accordance with the Agreement at any place *therein provided for*, whether that place is within or without the United States.

9 U.S.C. § 206 (emphasis added).

contract's meaning.'" Bear, Stearns & Co. v. Bennett, 938 F.2d 31, 32 (2d Cir. 1991) (quoting American Home Prods. Corp. v. Liberty Mut. Ins. Co., 748 F.2d 760, 765 (2d Cir. 1984)). Ambiguity in a contractual clause "does not exist simply because the parties urge different interpretations." Hugo Boss Fashions, Inc. v. Federal Ins. Co., 252 F.3d 608, 616 (2d Cir. 2001).

While Clause 5 does not dictate a single location for arbitration in the event of a dispute, it does speak to which party can choose where the arbitration shall take place. Hughes Hooker strenuously argues that Clause 5 grants to the defending party – here the American Club – only the choice of arbitration or the courts, leaving the choice of the location to the party instituting the adversary proceeding. However, the American Club contends, and the Court agrees, that Clause 5 allows both the choice between arbitration and the courts and the choice of the location between England and the United States to be made by the "defending party."

A plain reading of the clause shows that it entitles a party defending a suit arising from the Agreement to choose both arbitration and the forum for the arbitration. Because the term "defending party" has no definitive meaning except in the context of a litigation or an arbitration, the only plausible construction of the forum selection provision is that the party defending an adversary proceeding involving the Agreement – either before a court or an arbitration panel – has the right to choose whether the dispute will be resolved in England or the United States. It is clear that the American Club – as the party defending the litigation instituted by Hughes Hooker – is the "defending party" for purposes of Clause 5. Thus, the American Club's choice of England as the forum for arbitration is enforceable. See U.S. Titan, 241 F.3d at 146.

### C. A Stay of this Action Against the Remaining Defendants Pending Arbitration Is Warranted

A stay of proceedings as to one defendant pending arbitration between that defendant and the plaintiffs may be extended to the remaining defendants pursuant to a district court's inherent power to control its docket.[6] See WorldCrisa Corp. v. Armstrong, 129 F.3d 71, 76 (2d Cir. 1997); see also Nederlandse Erts-Tankersmaatschappij v. Isbrandtsen Company, 339 F.2d 440, 441 (2d Cir. 1964); Sea Spray Holdings Ltd. v. Pali Financial Group, Inc., 269 F. Supp. 2d 356, 366 (S.D.N.Y. 2003). To be entitled to a stay, defendants who were not party to the Agreement bear the burden of showing that Hughes Hooker will not be prejudiced by an extension of the stay to them, and that the balance of hardships and interests of judicial economy favor an extension. See Nederlandse, 339 F.2d at 441; WorldCrisa, 129 F.3d at 76; Danisco A/S v. Novo Nordisk A/S, 01 Civ. 10557, 2003 WL 282391 at *4 (S.D.N.Y. Feb. 10, 2003).

Hughes Hooker contends that extending the stay to the remaining defendants would prejudice its ability to secure timely relief. However, contrary to Hughes Hooker's allegations, there is no indication that defendants have hampered the progress of any attempt at arbitration. The defendants' previous refusal to produce discovery as requested by Hughes Hooker does not indicate an attempt by defendants to delay arbitration of this matter, and does not weigh against granting a stay of this matter pending arbitration. Plaintiffs have not shown that the information they seek is necessary to enable them to institute arbitration proceedings, and defendants have indicated that all defendants – including those not parties to

---

[6] Hughes Hooker contends that the Claims Bureau is actually a party to the Agreement even though its signature line on the Agreement is both crossed out and unsigned. The Claims Bureau maintains that it is not a party to the Agreement, and seeks a stay pursuant to the Court's inherent powers. The parties do not ask the Court to resolve this question, and in fact, the defendants have undertaken to stipulate that the question be resolved in the first instance by the London arbitrator. (Proposed Stipulation and Order ¶ 1(c), attached as Ex. 7 to Bowles Aff.). Because the Court finds that a stay of this action against all defendants is warranted in the interests of judicial economy, the Court need not resolve the issue. See WorldCrisa Corp. v. Armstrong, 129 F.3d 71, 76 (2d Cir. 1997) (citation omitted) (finding it unnecessary to decide whether party might be subject to arbitration pursuant to agency principles because a stay was warranted pursuant to district court's inherent powers).

the Agreement – would comply with the discovery orders of a London arbitrator as though they were residents of London.  (Proposed Stipulation and Order ¶ 1(b), attached as Ex. 7 to Bowles Aff.).

Moreover, because Hughes Hooker's claims against the individual defendants center around and depend upon Hughes Hooker's interpretation of the contractual agreement that is subject to arbitration, judicial economy favors a stay of this action pending the resolution of Hughes Hooker's central breach of contract claim against the American Club.  The likelihood that a failure to extend a stay against the remaining defendants would result in duplicative discovery and create the possibility of inconsistent outcomes further weighs in favor of a stay.  See Sea Spray Holdings, 269 F. Supp. 2d at 365.

In sum, because defendants have demonstrated that extending a stay is unlikely to prejudice Hughes Hooker and is likely to further the interests of judicial economy and fairness, a stay of this action as to all defendants pending arbitration in England is appropriate.

### D.   Hughes Hooker Has Not Demonstrated that Pre-Arbitration Discovery Is Necessary

Hughes Hooker has cross moved for pre-arbitration discovery of information relating to defendants' registry of members and premiums that would allow Hughes Hooker to calculate outstanding commissions allegedly owed to Hughes Hooker.  Hughes Hooker contends that information is necessary in order to enable it to evaluate the monetary value of its claim with greater precision.  Hughes Hooker contends that this Court should order that discovery because it is not clear whether the documents sought are under the control of the American Club or the Claims Bureau, and if they are within the control of the Claims Bureau, Hughes Hooker apparently fears that the London arbitrator would lack the authority to compel the production of those documents.

However, "discovery on the subject matter of a dispute to be arbitrated should be denied in the absence of extraordinary circumstances," Falcone Bros. Partnership v. Bear Stearns & Co., 699 F. Supp. 32, 35 (S.D.N.Y. 1988) (denying motion because no extraordinary circumstances had been shown); see also Cotter v. Shearson Lehman Hutton, Inc., 126 F.R.D. 19, 21 (S.D.N.Y. 1989). Plaintiffs have demonstrated no reason why the requested discovery must be had immediately. Defendants correctly contend that Hughes Hooker is seeking discovery that relates to potential damages, and plaintiffs have not shown that they will be unable to formulate a claim for purposes of arbitration in England without that discovery. Hughes Hooker also has not shown that time is of the essence, as it seeks only documents, not depositions of persons who may be unavailable in the future. See e.g., Bergen Shipping Co. v. Japan Marine Servs. Ltd., 386 F. Supp. 430, 435, n.8 (S.D.N.Y. 1974) (pre-arbitration depositions appropriate where crew members were about to leave port and there was no expected date of return). Moreover, Hughes Hooker's contention that documents in the hands of the Claims Bureau may be unavailable in the arbitration proceeding is belied by the defendants' undertaking to submit to discovery requests as set forth above. Because Hughes Hooker has not demonstrated the sort of extraordinary circumstances that would warrant discovery prior to arbitration, Hughes Hooker's cross motion is denied.

### III.  CONCLUSION

Finally, defendants have requested that the Court award them their costs in responding to what they characterize as a patently vexatious lawsuit and redundant motion practice. A court may require an attorney to pay costs if he "so multiplies the proceedings in any case unreasonably and vexatiously." See 28 U.S.C. § 1927. A court may also impose attorney's fees pursuant to its own "inherent power." See Revson v. Cinque & Cinque, 221

F.3d 71, 79 (2d Cir. 2000). However, "'[t]o impose sanctions under either authority, the trial court must find clear evidence that (1) the offending party's claims were entirely meritless and (2) the party acted for improper purposes." Id. (quoting Agee v. Paramount Communications Inc., 114 F.3d 395, 398 (2d Cir. 1997)). Neither the institution of the lawsuit in this Court nor the filing of the amended complaint pursuant to the Court's order merits the imposition of costs on plaintiffs or their attorneys.

For the reasons set forth above, the motion by all the defendants to stay the proceedings before this Court is granted; plaintiffs are directed to proceed with arbitration against the American Club in England; and plaintiffs' cross motion for discovery is denied. This action shall be placed on the suspense calendar pending the conclusion of the arbitration in England.

Dated: New York, New York
      June 9, 2005

SO ORDERED:

Sidney H. Stein, U.S.D.J.