UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
HUGHES, HOOKER & CO. AND          :
HUGHES, HOOKER (CORRESPONDENTS) S.A.,    :
                                  :
            Plaintiffs,           :
                                  :        04 CV 1859(SHS)(GWG)
      -against-                   :
                                  :
AMERICAN STEAMSHIP OWNERS MUTUAL   :
PROTECTION AND INDEMNITY ASSOCIATION, :
INC., SHIPOWNERS CLAIMS BUREAU,    :
JOSEPH E.M. HUGHES, THOMAS J. MCGOWAN, :
AND VINCENT J. SOLARINO,          :
                                  :
            Defendants.           :
-----------------------------------------------------------------X

## ANSWERING MEMORANDUM OF LAW
## IN OPPOSITION TO ORDER TO SHOW CAUSE
## SEEKING ENTRY OF A PARTIAL FINAL
## <u>JUDGMENT ON ISSUES SUBJECT TO ARBITRATION</u>

OF COUNSEL
ARMAND M. PARÉ, JR.
LAWRENCE J. BOWLES

NOURSE & BOWLES, LLP
Attorneys for Defendants
One Exchange Plaza
At 55 Broadway
New York, NY 10006
(212) 952-6200

**TABLE OF CONTENTS**

Introductory Statement .......................................................................................................... 1

Summary of Relevant Facts ................................................................................................... 2

POINT I
THE LEGAL BASIS ON WHICH THIS COURT IS EMPOWERED
TO AWARD LEGAL FEES IN CONNECTION WITH AN
ARBITRATION MOTION IS LIMITED ............................................................................... 4

POINT II
THE ATTORNEYS' FEES IN QUESTION REPRESENT DAMAGES WHICH ARE
PROPERLY AWARDABLE BY ARBITRATORS IN LONDON
UNDER ENGLISH LAW ........................................................................................................ 6

POINT III
THE ROLE OF THE COURT WAS AND REMAINS SIMPLY TO DETERMINE
WHETHER THE MATTER IS SUBJECT TO ARBITRATION AND,
IF SO, TO LEAVE SUBSTANTIVE ISSUES FOR DETERMINATION
BY THE ARBITRATOR ......................................................................................................... 9

POINT IV
PLAINTIFFS ARE NOT ENTITLED TO THE RELIEF THEY SEEK
UNDER FRCP RULE 54 ...................................................................................................... 13

Conclusion ............................................................................................................................ 16

NOURSE & BOWLES, LLP
Attorneys for Defendants
One Exchange Plaza
At 55 Broadway
New York, NY 10006
(212) 952-6200

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
HUGHES, HOOKER & CO. AND                               :
HUGHES, HOOKER (CORRESPONDENTS) S.A.,    :
                                                                            :
                        Plaintiffs,                               :
                                                                            :          04 CV 1859(SHS)(GWG)
            -against-                                             :
                                                                            :
AMERICAN STEAMSHIP OWNERS MUTUAL       :
PROTECTION AND INDEMNITY ASSOCIATION,  :
INC., SHIPOWNERS CLAIMS BUREAU,                 :
JOSEPH E.M. HUGHES, THOMAS J. MCGOWAN,  :
AND VINCENT J. SOLARINO,                             :
                                                                            :
                        Defendants.                            :
-------------------------------------------------------------------X

### ANSWERING MEMORANDUM OF LAW
### IN OPPOSITION TO ORDER TO SHOW CAUSE
### SEEKING ENTRY OF A PARTIAL FINAL
### JUDGMENT ON ISSUES SUBJECT TO ARBITRATION

### Introductory Statement

This memorandum of law and accompanying declarations of Lawrence J. Bowles

and Nicholas George Parton are submitted on behalf of defendants, American Steamship

Owners Mutual Protection and Indemnity Association, Inc., Shipowners Claims Bureau,

Joseph E.M. Hughes, Thomas J. McGowan, and Vincent J. Solarino (hereinafter

"Defendants") in opposition to the order to show cause presented by plaintiff, Hughes,

Hooker & Co. and Hughes, Hooker (Correspondents) S.A. (hereinafter "Plaintiffs").  By

that order to show cause Plaintiffs, in effect, seek to bar certain issues of damages from

being presented in a London arbitration which arbitration had previously been ordered

when this Court stayed Plaintiffs' action by its Order and Opinion dated June 9, 2005.

## Summary of Relevant Facts

Plaintiffs filed a 30-page amended complaint against Defendants on or about

December 17, 2004.  They did so despite having been previously advised that the

defending party "would be entitled to, and would, move to dismiss or stay the action in

favor of English law and arbitration in accordance with its rights under the agreement."

(see Exhibit "B" to Parton Declaration; the Parton Declaration is Exhibit "3" to the

Bowles Declaration).  A second request to dismiss its action in favor of English

arbitration was also rejected. (Exhibits "1" and "2" to Bowles Declaration).  Defendants

were then required to move to stay this action pending arbitration in London.  By its

Opinion and Order dated June 9, 2005 this Court stayed that action pending the

"conclusion of the arbitration in England."  The action remains stayed and no motion has

been made to lift the stay.  In Defendants' previous papers which had sought the stay,

Defendants had also sought an award of attorneys' fees under this Court's limited power

to award sanctions and fees for vexatious litigation.  Although this Court granted

Defendants' motion to stay the action, it denied the request for attorneys' fees, stating, in

relevant part:

> Finally, defendants have requested that the Court award them their costs in responding to what they characterize as a patently vexatious law suit and redundant motion practice. A court may require an attorney to pay costs if he "so multiples the proceedings in any case unreasonably and vexatiously." See 28 U.S.C. § 1927. A court may also impose attorneys' fees pursuant to its own "inherent power." See Revson v. Cinque & Cinque, 221 F.3d 71, 79 (2d Cir. 2000). However, "[t]o impose sanctions under either authority, the trial court must find clear evidence that (1) the offending party's claims were entirely meritless and (2) the party acted for improper purposes." Id. (quoting Agee v. Paramount Communications Inc., 114 F.3d 395, 398 (2d Cir. 1997). Neither the institution of the lawsuit in this Court nor the filing of the amended complaint pursuant to the Court's order merits the imposition of costs on plaintiffs or their attorneys.

Opinion and Order at pp. 12-13

As outlined herein and in the Parton declaration, under English law, arbitrators in London have broad authority to award attorneys' fees as damages for one party breaching an agreement to arbitrate by suing on a claim that is subject to arbitration. Based on this principle of English law, Defendants have sought *damages* in the London arbitration which includes damages in the form of attorneys' fees incurred by Defendants in having to move to stay Plaintiffs' action. This is entirely in accordance with the substantive rule of damages available in an English arbitration. Despite this, Plaintiffs now move, on order to show cause, to, in effect, bar Defendants from seeking such damages in the London arbitration. Plaintiffs' argument is that, because this Court denied Defendants' request for legal fees in the form of sanctions when it stayed Plaintiffs' action, this should bar Defendants from seeking these same attorneys' fees as damages in the English arbitration. The method by which Plaintiffs seek to accomplish this is to have this Court

issue a partial final "judgment" under Rule 54(b) of the Federal Rule of Civil Procedure

that legal fees are not recoverable, apparently on *any* basis, and thereby, in effect, deprive

the arbitrator in London of jurisdiction to rule on whether such fees should be awarded

under English law as damages for breach of the arbitration agreement in this case.

Plaintiffs' order to show cause misconceives the basis of this Court's prior ruling which

simply denied a request for sanctions. It is respectfully submitted that nothing in the

Court's prior Opinion and Order did or should interfere with Defendants' ability to seek,

as damages, the fees in question in the London arbitration in accordance with English

law.

## POINT I

### THE LEGAL BASIS ON WHICH THIS COURT IS EMPOWERED TO AWARD LEGAL FEES IN CONNECTION WITH AN ARBITRATION MOTION IS LIMITED

The legal basis on which this Court might award attorneys' fees is limited. As the

case of <u>Revson v. Cinque & Cinque, P.C.</u>, 221 F.3d 71, 78-9 (2d Cir. 2000), previously

relied on by this Court in its Opinion and Order, said:

> The court has inherent power to sanction parties and
> their attorneys, a power born of the practical necessity that
> courts be able "to manage their own affairs so as to achieve
> the orderly and expeditious disposition of cases." *Chambers
> v. NASCO, Inc.*, 501 U.S. 32, 43, 111 S.Ct. 213 115 L.Ed.2d
> 27 (1991)(internal quotation marks omitted). This owner may
> likewise be exercised where the party or the attorney has
> "acted in bad faith, vexatiously, wantonly, or for oppressive
> reasons." *Alyeska Pipeline Service Co. v. Wilderness Society*,
> 421 U.S. 240, 258-59, 95 S.Ct. 1612, 44 L.Ed.2d 141
> (1975)(internal quotation marks omitted). An award of

sanctions under the court's inherent power requires both "clear evidence that the challenged actions are *entirely without color*, and [are taken] for reasons of harassment or delay or for other improper purposes[,] and a high degree of specificity in the factual findings of [the] lower courts." *Oliveri v. Thompson,* 803 F.2d 1265, 1272 (2d Cir. 1986) (internal quotation marks omitted)(emphasis added), *cert. denied,* 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987). A claim is colorable "when it has some legal and factual support, considered in light of the reasonable beliefs of the individual making the claim." *Nemeroff v. Abelson,* 620 F.2d 339, 348 (2d Cir. 1980)(per curiam).

Under § 1927, "[a]ny attorney . . . who so multiples the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. "Bad faith is the touchstone of an award under this statute." *United States v. International Brotherhood of Teamsters,* 949 F.2d 1338, 1345 (2d Cir. 1991). "Like an award made pursuant to the court's inherent power, an award under § 1927 is proper when the attorney's actions are *so completely without merit* as to require the conclusion that they must have been undertaken for some improper purpose such as delay." *Oliveri v. Thompson,* 803 F.2d at 1273 (emphasis added); *id.* ("[A]n award made under § 1927 must be supported by a finding of bad faith similar to that necessary to invoke the court's inherent power. . . .").

Thus, "[t]o impose sanctions under either authority, the trial court must find clear evidence that (1) the offending party's claims were entirely meritless and (2) the party acted for improper purposes." *Agee v. Paramount Communications Inc.,* 114 F.3d 395, 398 (2d Cir. 1997).

See also <u>Agee v. Paramount Communications Inc.</u>, 114 F.3d 395, 398 (2d Cir. 1997). In

<u>W.K. Webster v. American President Lines, Ltd.</u>, 32 F.3d 665 (2d Cir. 1994) the Court of

Appeals for the Second Circuit reversed an award of attorneys' fees which the district

court had awarded against the appellant for opposing confirmation of an arbitration

award. In doing so, this Court said:

> We do not think that the application of APL to vacate the
> arbitration award and its opposition to confirmation of the
> award were interposed for any improper purposes. . . . APL
> clearly presented colorable claims with regard to issues it
> raised and made plausible arguments in support of its
> positions. Accordingly, sanctions are not warranted in this
> case.

32 F.3d at 670

The prior Opinion and Order of this Court denied Defendants' request for

attorneys' fees based on these principles. It seems patently obvious that these principles

and the Court's prior Opinion and Order in no way imply that a claim for these same

attorneys' fees may not be asserted as damages under English law in the London

arbitration.


**POINT II**

**THE ATTORNEYS' FEES IN QUESTION REPRESENT
DAMAGES WHICH ARE PROPERLY AWARDABLE
BY ARBITRATORS IN LONDON UNDER ENGLISH LAW**

As outlined in the accompanying declaration of Nicholas George Parton, when a

party has agreed to litigate or arbitrate a claim in a particular forum and that party sues

elsewhere, that constitutes a breach of contract and damages may be awarded under

English law for that breach which includes legal costs to seek a stay of the improperly

commenced litigation. The case of <u>Union Discount Co., ltd. and Robert Zoller & Ors.</u> is

particularly on point. (see Exhibit "D" to Parton Declaration). In that case, Zoller and

6

Union Cal had entered into an agreement which contained an "Exclusive Jurisdiction

Clause ('EJC') nominating England." Zoller, nevertheless sued Union Cal in New York.

Union Cal successfully moved to dismiss that action on the basis of the exclusive English

jurisdiction clause. In England, Union Cal claimed as damages the legal costs it had

incurred in moving to dismiss in New York. The issue was whether that amounted to a

valid claim for damages under English law as some prior precedent had indicated it was

not. The Court of Appeals held that the "foreign" legal fees were, in fact, recoverable as

damages under English law relying, in particular, on a prior decision of Lord Justice

Devlin, Master of the Rolls, in Quartz Hill Consolidated Gold Mining co. v. Eyre, 11

Q.B.D. 674. In the course of that opinion, Lord Devlin distinguished between the

"taxation" of legal fees as "costs" under English procedure (pursuant to which the

prevailing party is entitled to reasonable attorneys' fees) and the awarding of legal fees as

damages, saying:

> I find it difficult to see why the law should not now recognize
> one standard of costs as between litigants and another when
> those costs form a legitimate items of damage *in a separate*
> *cause of action flowing from a different and additional*
> *wrong.* [Our emphasis] . . . The stringent standards that
> prevail in a taxation of party and party costs can be
> justified. . . . it helps to keep down extravagance in litigation
> and that is a benefit to all those who have to resort to the law.
> But the person who ought to be able to share in that benefit is
> the man who ex hypothesi is abusing the legal process for his
> own malicious ends.

> (see Exhibit "D" to Parton Declaration)
> (emphasis in original)

In the opinion in Union Discount itself, Justin Schiemann said:

7

It is important to emphasise that in the present case the following unusual features are all present:

i)      The costs which the claimant seeks to recover in the English proceedings were incurred by him when he was a defendant in foreign proceedings brought by the defendant in the English proceedings.

ii)     The claimant in the foreign proceedings brought those proceedings in breach of an express term, the EJC, which, it is assumed for present purposes, has the effect of entitling the English claimant to damages for its breach.

iii)    The rules of the foreign forum only permitted recovery of costs in exceptional circumstances.

iv)     The foreign court made no adjudication as to costs.

It is common ground that there is no binding authority which inhibits us from granting Union Cal relief in damages in the present case. The relief is predicted on the assumption, not in issue before us, that the brining of the New York proceedings itself constituted a breach of contract which has resulted in damages which are prima facie recoverable. Thus it is common ground that the action should not have been struck out unless there are policy reasons which prevent the recover of these damages.

(Exhibit "D" to Parton Declaration)

The court went on to conclude that there was no policy reason for not awarding the legal fees incurred in the New York action as damages in the English proceeding.

As indicated in the accompanying declaration of Mr. Parton, English arbitrators, likewise, routinely award legal costs incurred in a "foreign" proceeding ("foreign" to England) as damages where there is a breach of an exclusive jurisdiction clause which required that such legal action be taken.

In this case, Defendants had requested that Plaintiffs dismiss this action and arbitrate in London as this Court eventually ruled was required. Plaintiffs refused to accede to this thereby giving rise to the need for Defendants to move to stay. The resulting legal expense forms a valid claim for damages in the English arbitration notwithstanding the fact that these expenses happen not to be recoverable as sanctions under the limited rules applicable in this Court for awarding attorneys fees.

## POINT III

### THE ROLE OF THE COURT WAS AND REMAINS SIMPLY TO DETERMINE WHETHER THE MATTER IS SUBJECT TO ARBITRATION AND, IF SO, TO LEAVE SUBSTANTIVE ISSUES FOR DETERMINATION BY THE ARBITRATOR

This court previously ordered that this action be stayed and this ruling is, of course, binding on Plaintiffs who should not be free to revisit this issue as the Court's order placed the case "on the suspense calendar pending *conclusion* of the arbitration in England." (emphasis added; Order and Opinion at p. 13). In fact, no motion to lift the stay has been sought nor granted and the motion for the order to show cause is therefore in violation of the Court's prior Opinion and Order.

The role of the court was, at the time it entered a stay of the action (and remains) simply to determine whether the case is subject to arbitration and, if so, to stay the action and leave the resolution of all substantive issues to arbitration. The Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S. Code 9 § 201 et seq.,

found applicable by this Court in its prior Opinion and Order (pp. 5-6), is unmistakenly

clear on this. It provides in Article II (3):

> The court of a Contracting State, when seized of an action in
> a matter in respect to which the parties have made an
> agreement within the meaning of this article shall at the
> request of one of the parties, refer the parties to arbitration,
> unless it finds that the said agreement is null and void,
> inoperative or incapable of being performed.

Indeed, there is a strong federal policy in favor of arbitration. As stated in Banque

de Paris et des Pays-Bas v. Amoco Oil Co., 573 F. Supp. 1465 (S.D.N.Y. 1983):

> In determining the arbitrability of a dispute and thus the
> appropriateness of a stay, "the federal policy [is] to construe
> liberally arbitration clauses, to find that they cover disputes
> reasonably contemplated by [the contractual] language, and to
> resolve doubts in favor of arbitration." *Metro Industrial*, 287
> F.2d at 385. Furthermore, the federal court may not wander
> from the narrow issue of arbitrability—whether a particular
> issue is "referable to arbitration under an agreement in writing
> for such arbitration." 9 U.S.C. § 3.

573 F. Supp. at 468

In its earlier Opinion and Order, this Court observed:

> In reviewing defendants' motion for a stay pending
> arbitration, the Court is guided by a "federal policy [that]
> strongly favors arbitration as an alternative dispute resolution
> process." David L. Threlkeld & Co. v. Metallgesellschaft,
> Ltd., 923 F.2d 245, 248 (2d Cir. 1991)(citing Rodriguez de
> Quijas v. Shearson/American Express, Inc., 490 U.S. 477,
> 109 S. Ct. 1917, 104 L. Ed. 2d 526 (1989) and Genesco, Inc.
> v. T. Kakiuchi & Co., 815 F.2d 840, 844 (2d Cir. 1987)).
> Where there is a question as to whether claims are arbitrable,
> federal arbitration policy requires that "any doubts . . . be
> resolved in favor of arbitration." Moses H. Cone Memorial
> Hospital v. Mercury Construction Corp., 460 U.S. 1, 24-25,
> 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983); see also Louis
> Dreyfus Negoce, S.A. v. Blystad Shipping & Trading Inc.,

> 252 F.3d 218, 223 (2d Cir. 2001).  This policy favoring
> arbitration "is even stronger in the context of international
> business transactions." Threlkeld & Co., 923 F.2d at 248
> (citing Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth,
> Inc., 473 U.S. 614, 629-31, 105 S. Ct. 3346, 87 L. Ed. 2d 444
> (1985)).

Opinion and Order at pp 4-5

As indicated, the policy in favor of arbitration requires that "any doubts as to the

arbitrability of an issue should be resolved in favor of arbitration."  In Miletic v. Holm &

Wonsild, 294 F. Supp. 772, 775-6 (S.D.N.Y. 1968).  In Miletic, a claim was asserted

against Cunard which did not arise under the charter party containing the arbitration

clause, but, instead, arose under Cunard's separate role as a stevedore for breach of its

warranty of workmanlike performance.  This claim was deemed to also be subject to

arbitration, in part, under the broad policy in favor of arbitration.  In Lewittes & Sons v.

United Furniture Workers of America, C.I.O., 95 F. Supp. 851 (S.D.N.Y. 1951) a party

opposing a motion to stay asserted that the issue concerning the claimed damages in that

case was not arbitrable under the particular arbitration clause.  The Court rejected that

contention noting that "The arbitration clause is not made applicable to any specific

subject matter. . . .  No where are their words of limitation narrowing the scope of

arbitrable matters and the Court is not at liberty to engraft exceptions to the all-embracing

language selected by the parties."  95 F. Supp. at 853.

In its prior Opinion and Order, the Court observed of this clause in question:

> Clause 5 of the Agreement is plainly a "broad"
> arbitration provision, expressing the parties' "intent to have
> arbitration serve as the primary recourse for disputes
> connected to the agreement," Louis Dreyfus Negoce, S.A. v.

11

Blystad Shipping & Trading, Inc., 252 F.3d 218, 225 (2d Cir.
2001), and it is broad enough to encompass all claims
asserted against the American Club. See ACE Capital Re
Overseas Ltd., 307 F.3d at 34. Clause 5 states simply that the
Agreement "is subject to American or English law . . . either
in arbitration, before a single arbitrator, or before the regular
courts." It contains no words of limitation; nor does its text
evince any intent by Hughes Hooker or the American Club to
limit its application.

In its First Amended Complaint, Plaintiffs sought recovery of damages of

$3,172,000 for alleged "unpaid commissions" and a further $1,920,000 for alleged "loss

of claims handling advice work." These claims in excess of 5 million dollars have now

been submitted in the London arbitration. "Defence submissions" were provided to those

claims on or about November 7, 2005. In these "Defence submissions", counterclaims

arising from the same transaction were submitted in an amount far less than Plaintiffs'

claims (the total of all counterclaims is under $500,000), including the claim for the

damages for attorneys' fees of $59,950.79 which forms the subject of Plaintiffs' motion.

As indicated in the accompanying declaration of Mr. Parton, such "counterclaims"

amount to defenses by way of a set-off to Plaintiffs' far larger claims in the arbitration.

Such claims are allowed as set-offs even if the counterclaims are otherwise time barred as

has been claimed by Plaintiffs (Parton Declaration, ¶3). As such, these claims are clearly

arbitrable under the clause. Furthermore, these claims are arbitrable under the London

Maritime Arbitration Association rules, clause 10 of which provides:

10. The jurisdiction of the tribunal shall extend to
determining all disputes arising under or in connection
with the transaction the subject of the reference, and each
party shall have the right before the tribunal makes its

> award (or its last award, if more than one is made in a
> reference) to refer to the tribunal for determination any
> further dispute(s) arising subsequently to the
> commencement of the arbitral proceedings.

Parton Declaration at ¶ 5

In the circumstances, the attorneys' fees which form the subject of Plaintiffs' motion are plainly subject to arbitration.

**POINT IV**

**PLAINTIFFS ARE NOT ENTITLED TO THE
RELIEF THEY SEEK UNDER FRCP RULE 54**

In its prior Opinion and Order in this case, the Court, *inter alia*, stayed the action against all the named defendants, directed Plaintiffs "to proceed with arbitration against the American Club in England," and placed the action "on the suspense calendar pending the conclusion of the arbitration in England" (Opinion and Order at p.13). The Court's order for Plaintiffs to arbitrate with the American Club, is not an appealable order. The United States Arbitration Act ("Arbitration Act"), 9 U.S. Code §1 et seq. provides, in relevant part at § 16(b):

> (b) Except as otherwise provided in section 1292(b) of title 28, an appeal may
> *not* be taken from an interlocutory order-
>> (1) granting a stay of any action under section 3 of this title;
>> (2) directing arbitration to proceed under section 4 of this title;
>> (3) compelling arbitration under section 206 of this title; or
>> (4) refusing to enjoin an arbitration that is subject to this title.
>
> (emphasis added)<br>Arbitration Act at §16(b)

The lack of appealability is relevant to Rule 54 of the Federal Rules of Procedure which Plaintiffs have invoked for the relief they seek in their motion. Rule 54(a) plainly states that the term 'judgment' as used in the rules includes a decree and any order *from which an appeal lies* (emphasis added). Rule 54(b) then uses the term "final judgment" and provides, in relevant part:

> (b) JUDGMENT UPON MULTIPLE CLAIMS OR INVOLVING MULTIPLE PARTIES. When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim or third-party claim, or when multiple parties are involved, the court may direct the entry of a *final judgment* as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment . . .

(emphasis added)

"'Final decision' is a legal term of art traditionally used to distinguish appealable and nonappealable lower court decisions under 28 U.S. Code § 1291—the general provision governing appellate jurisdiction." Perara v. Siegel Trading Co., 951 F.2d 780, 783 (7th Cir. 1992).

Two points flow from Section 16 (b) of the Arbitration Act and Rule 54. First, the Court's core order respecting the stay pending arbitration is not itself appealable by reason of § 16 of the Arbitration Act. Furthermore, because that order is not and cannot be a "judgment" within the meaning of Rule 54(a), the Court therefore could not "direct the entry of a final judgment" respecting the arbitration order under Rule 54(b). Perara v. Siegel Trading Co., supra at 951 F.2d at 786 ("Moreover, this court never meant to imply that the mere entry of a Rule 54(b) judgment, although improper, could transform an

14

interlocutory decision into a final decision."). As stated in Moore's an order which is

unappealable under 28 U.S. Code § 1291 cannot give rise to a Rule 54(b) partial final

judgment:

> Accordingly, an order partially adjudicating a multi-party or
> multi-claim action may be certified for appeal under
> Rule 54(b) *only if* the order meets § 1291's standard of
> finality as to the matters adjudicated.
>
> > (emphasis added)
> > 10 Moore's at § 54.22[2][i]

Second, the derivative claim for attorneys' fees associated with the order

respecting arbitration stands on an even weaker footing for the entry of a "final

judgment" under Rule 54(b). The claim for attorneys' fees is collateral, at best, to the

core request for a stay pending arbitration which itself cannot give rise to entry of a Rule

54(b) judgment, as explained above. As stated in 10 Moore's:

> An order on a *collateral issue* such as the manner of the
> adjudication of its claim *cannot be a judgment* under Rule
> 54(b), and the court is without power to certify it as a
> judgment under this rule.
> > (emphasis added)
> > 10 Moore's at § 54, 22 [2] [a] ][ii]

For this, Moore's cites to the case in Shipes v. Trinity Industries Inc., 883 F.2d 339 (5th

Cir. 1989) cert. denied 510 U.S. 991 (1993) and states this case stands for the proposition

that an "order awarding interim attorneys' fees did not decide any claim for relief and

could not be certified under Rule 54(b)." 10 Moore's 54 22 [2] [a] [ii] at footnote 31.

Furthermore, "Rule 54(b) is applicable only if the order adjudicates *all of the*

*claims* presented by or against at least one of the multiple parties." (emphasis added).

10 Moore's § 54.22 [1]. Here, this court did not "adjudicate" any of the claims against any of the defendants and, indeed, the arbitration has not yet adjudicated any of the claims against any party.

Hence, that portion of the Court's prior Opinion and Order denying attorneys' fees cannot give rise to the entry of a partial "final judgment" under Rule 54.

### Conclusion

It is respectfully submitted that there has not been and should not be any determination by this Court barring Defendants from seeking the recovery of the attorneys' fees in question *as damages* in the London arbitration. In the circumstances, it is further respectfully submitted that Plaintiffs' order to show cause, which, in effect, seeks to deprive the arbitrator from hearing this issue of damages, should be denied.

Dated:     New York, New York
           April 10, 2006

                            Respectfully submitted,
                            NOURSE & BOWLES, LLP
                            Attorneys for Defendants

                    By:    _____

                            Armand M. Paré, Jr. (AP-8575)
                            One Exchange Plaza
                            At 55 Broadway
                            New York, NY 10006
                            (212) 952-6200

Of Counsel:
Lawrence J. Bowles, Esq.